## MAGGIE L. LUKENS v. INTERNATIONAL LIFE INSURANCE COMPANY, Appellant.

### In Banc, January 17, 1917.*

1. **INSURANCE POLICY: Place of Contract.** Where the application for an insurance policy was taken in Illinois, the policy delivered to the insured there and accepted by him there, and thereupon payment of the premium was made there, the contract was an Illinois contract, notwithstanding the company was a Missouri corporation, with its home office in Missouri, and the policy was signed by its chief officers and made payable at the home office; and the policy being an Illinois contract, is governed by the laws of Illinois.

2. ——: ——: **Suit in Equity: Res Adjudicata.** A suit in equity brought in Illinois by an insurance company against the beneficiary of a policy to compel specific performance of an agreement to accept a certain sum in settlement of all claims upon the policy, and to enjoin her from prosecuting any action at law upon the policy, in which it was decreed that the alleged agreement was void for lack of mutuality, that there was no equity in the case, that the beneficiary has a complete remedy at law, and that the policy was a Missouri contract, and the bill is dismissed, was not an adjudication that the policy was a Missouri contract, and is not binding upon the Missouri courts when an action at law is brought upon the policy; for the validity of the alleged agreement did not depend upon the question of whether the policy was an Illinois or a Missouri contract, and the company's liability on the policy was not involved in that suit.

3. **RES ADJUDICATA: Test.** The test of whether or not a former suit in equity is *res adjudicata* of an issue arising in a subsequent action at law is: Do both actions embrace the same issue, require the same evidence, and, though in different form, call for substantially the same result?

---

*Note.—Opinion filed December 21, 1916. Motion for rehearing filed. Motion overruled January 17, 1917.

4. **INSURANCE POLICY**: Suicide: Illinois Contract. The Missouri statute (Sec. 6945, R. S. 1909) eliminating from an insurance policy a clause avoiding the policy in case of suicide has no extra-jurisdictional force, and is not available to the beneficiary to defeat suicide as a defense in an action at law brought in the Missouri courts upon a policy which is an Illinois contract. The statute is but an inhibition against making insurance contracts in Missouri with citizens of Missouri in which the insurer is relieved of liability in the event the insured commits suicide. It does not affect contracts made in other States which contain clauses avoiding the policies in case the insured commits suicide, although the insurer is a Missouri corporation.

5. ———: ———: ———: Constitutionality. The Missouri statute which declares that the fact that the insured committed suicide, unless contemplated at the time he made application, shall not avail as a defense in an action on the policy, even when held not to apply to contracts made in other States, does not violate that part of the Fourteenth Amendment which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.

Appeal from Jackson Circuit Court.—*Hon. E. E. Porterfield*, Judge.

REVERSED AND REMANDED.

*Humphrey, Boxley & Reeves* and *Edward P. Wilson* for appellant.

(1) If Frank E. Lukens committed suicide, then his beneficiary, the plaintiff, never had a cause of action against defendant: first, because the contract of insurance sued on was lawfully made in the State of Illinois; second, because the contract of insurance did not insure against the contingency of suicide; and third, because the insured committed suicide. (2) The constitutional question lodged by respondent should have been raised on the pleadings by replication as it is well settled law that in so grave a matter as a constitutional question it should be lodged in the case at the earliest moment that good pleadings and orderly procedure will admit under the circumstances of the given case, otherwise it will be waived. Lohmeyer v. Cordage Co., 214 Mo. 689. Defendant grounded an affirmative defense on a statute

that plaintiff contended was unconstitutional, therefore she should have pleaded its unconstitutionality in the reply. Lohmeyer v. Cordage Co., 214 Mo. 690; Dubowsky v. Binggeli, 258 Mo. 202; State v. Gamma, 215 Mo. 100; Howell v. Sherwood, 242 Mo. 513; Hartzler v. Met. St. Ry. Co., 218 Mo. 564; Hays v. Hogan, 180 Mo. App. 237, 253. (3) Plaintiff was denied no right by the provision of section 6945 complained against by reason of the fact that she was a resident of Illinois. Had she been a citizen of Missouri the statute would operate just the same. Chambers v. Railroad, 207 U. S. 142. In this clause the legislative enactment in question put a condition on the policy, which only applied to citizens of Missouri, and a State may enact statutes providing conditions for recovery on contracts. 8 Cyc. 1049; Ins. Co. v. Daggs, 172 U. S. 557; Daggs v. Orient Ins. Co., 136 Mo. 382. Section 2, article 4, Federal Constitution, is intended to prohibit the States from denying to the citizen of another State any of the privileges and immunities enjoyed by its own citizens by virtue of their being citizens. 8 Cyc. 1037; Paul v. Virginia; 8 Wall. (U. S.) 168.

*George J. Kuebler* and *Scarritt, Scarritt, Jones & Miller* for respondent.

(1) The issues of law and fact involved in this appeal were judicially determined in favor of the plaintiff herein and against the defendant herein in the circuit court of Cook County, Illinois, a court of competent jurisdiction, in a suit of the appellant against the respondent. It was there found and adjudged that the contract of insurance sued on herein was executed in the State of Missouri and that its construction is subject to the laws of that State; that in the law action pending in the State of Missouri (being the suit at bar), the alleged suicide of the insured does not constitute a defense; that the amount due under the said contract of insurance is fixed and certain and that upon the face of the policy the amount due is two thousand dollars; that the said court in Illinois had full jurisdiction of the subject-matter of and the respective parties to the said cause therein pending, and that the

complainant therein, defendant here, is not entitled to the relief sought, viz: the cancellation and surrender of the policy here sued on; that the report of proofs taken by the master in chancery therein be and the same was adopted as the proofs of the respective parties thereto; and that the said bill of complaint was adjudged to be and it was thereby dismissed for want of equity, and that the defendant recover her costs therein incurred. And that judgment being plead in the reply as *res adjudicata* and being duly proven is a conclusive determination against the defendant of the alleged defense of suicide set up in the answer. Barber Asphalt Pav. Co. v. Field, 132 Mo. App. 628; Gardner v. Gas & El. Co.. 154 Mo. App. 666; Choteau v. Gibson, 76 Mo. 45; Exposition & Driving Park v. Kansas City, 174 Mo. 442; Reynolds v. Hood, 209 Mo. 620; Tool Co. v. Spring Co., 146 Mo. App. 30; Pierce v. Pierce, 149 Mo. App. 416; Leet v. Gratz, 137 Mo. App. 208; Railroad v. United States, 168 U. S. 1; Hopkins v. Lee, 19 U. S. (6 Wheat.) 113; Mining Co. v. Mining Co., 157 U. S. 691; New Orleans v. Bank, 167 U. S. 396. (2) The suicide statute before amended was valid. By that statute its benefits were conferred upon and enjoyed equally and alike by the owners of the policies of insurance issued by companies doing business in this State without any discrimination between such owners by reason of citizenship, residence, or otherwise. And that law so written has been uniformly adjudged to be constitutional and valid. Jarman v. Indemnity Co., 104 Fed. 638; Indemnity Co. v. Jarman, 187 U. S. 197; Schmidt v. U. O. F., 228 Mo. 675; Whitfield v. Ins. Co., 205 U. S. 489. (3) The Act of April 15, 1899 (Laws 1899, p. 246), which purports to amend the general statute above referred to by inserting therein after the words, "doing business in this State," the following words, namely, "to a citizen of this State," is unconstitutional and void: (a) It is partial to and discriminates in favor of the citizens of Missouri as against citizens of other States, contrary to the guaranties of the second section of article 4 of the United States Con-

stitution, providing that the citizens of each State shall be entitled to all the privileges and immunities of citizens of the several States. Blake v. McClung, 172 U. S. 239; Sully v. Bank, 178 U. S. 289; Maynard v. Granite State P. Assn., 92 Fed. 435; Johnstone v. Kelly, 7 Pennewill (Del.), 119. (b) It is an attempt on the part of the State of Missouri to abridge the privileges and immunities of citizens of the United States and so deny to persons within its jurisdiction the equal protection of the laws, contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States. Ex parte Virginia, 100 U. S. 346; Barbier v. Connelly, 113 U. S. 31; Durkee v. Janesville, 28 Wis. 471; Sams v. Railroad, 174 Mo. 69; State ex rel. v. Hermann, 75 Mo. 353; State ex rel. v. Julow, 129 Mo. 177; State v. Busch, 170 Mo. 117; Houston v. Pub. Co., 249 Mo. 332. (4) The amendatory Act of 1899 being unconstitutional and void, the previous statute, Sec. 5855, R. S. 1889, remains the law of this State, and under this law the alleged suicide confessedly is no defense. Lexington v. Bank, 165 Mo. 681; People v. Butler St. F. & I. Co., 201 Ill. 236; Wilkinson v. Bd. of Children's Gdns., 158 Ind. 1; Barker v. Potter, 55 Nev. 25; Whitlock v. Hawkins, 105 Va. 242. (5) The contract of insurance sued on and all of the issues in the case are to be construed and determined under and in accordance with the laws of the State of Missouri and not under the laws of Illinois or any other State. That this proposition is true is self-evident from the simple fact that no statute or law of Illinois or any other State is pleaded or relied upon by the defendant, nor is there any evidence in the record tending to show what is the law of any such State. This court, therefore, is not confronted with a claim that the law of Illinois or any other State is different from the law of Missouri and that under such foreign law defendant enjoys rights and authority it cannot have under the laws of this State; and there being no issue raised in that respect and no evidence of any variance between the laws of Missouri and Illinois, this court must of necessity apply the law of the forum in the determination of the controversies now pre-

sented. 5 Thompson on Law of Corporations, secs. 5968, 5972; Day v. Buggy Co., 57 Mich. 146. The suicide clause of the contract being a violation of the positive legislation of this State will not be enforced by the courts of this State. Donovan v. Pitcher, 53 Ala. 411; Schllee v. Guckenheimer, 179 Ill. 593; Faulkner v. Hyman, 142 Mass. 63.

REVELLE, J.—This is an action by the beneficiary on a policy of insurance for $2000, dated August 15, 1911, and issued by the appellant. The judgment below was in favor of respondent for the full amount thereof, together with interest and $600 for damages and attorneys' fees on account of vexatious refusal to pay, the aggregate being $2690.

At the trial, and conformable to proper allegations in its answer, appellant offered evidence tending to show that the insured committed suicide within one year from the date of the policy. This respondent moved to strike from the record on the ground that the suicide clause in the policy of insurance was of no force and effect, because that part of the suicide statute of Missouri which limits the benefits thereof "to a citizen of this State" is unconstitutional, in that it denies to persons not citizens of this State the equal protection of the law and does not afford citizens of other States the privileges and immunities which it provides for its own citizens. This motion was sustained and the evidence tending to show suicide was rejected.

The policy contained the following provision:

"SUICIDE.—In case of suicide committed while sane or insane within one year from the date on which this insurance begins, the limit of recovery hereunder shall be the premium paid."

Such facts as are pertinent will be found in connection with the discussion of the subject to which they are material.

I. The first question challenging attention is whether the contract sued upon is governed by the laws of Missouri or Illinois, and this depends upon where it was finally consummated. In determining this it should be borne in mind that the action is on a policy of insurance, and not upon a contract for a policy of insurance.

**Locus Contractus.**

The record discloses that the defendant company is a Missouri corporation and has its principal office of business in St. Louis. The insured, as well as the beneficiary, who was his wife, resided in Chicago, Illinois, at the time the policy contract was executed. One C. E. Scott was the general agent for the defendant company and the city of Chicago was within the territorial limits of his authority. He testified that a note for $193.70 was given him in settlement for the policy, and that when same was past due, $18.70 thereon was paid to him by the insured, whereupon this note was delivered to the insured, and another for $175 was executed by the insured and delivered to him (Scott); that in the aggregate the sum of $188.70 was actually paid for and on the policy and that the same was paid to him. The policy is dated August 15, 1911, and the first premium note was executed about August 26, 1911. The policy expressly provided, in the consideration clause, for the payment of $193.70 in advance and on its delivery. Respondent, beneficiary and wife of the insured, testified as follows:

"We had lived in Chicago seventeen years. We had a home there and that was his residence . . . knew he had insurance in the International Life Insurance Company before he died. I knew that because a man came one day and rang my bell and called up the tube and asked me some questions and I asked him who he was and he said he was from a life insurance company, and when Mr. Lukens came home I told him about it and said: 'Who was he?' and he says: 'I am taking out some life insurance.' I did not see the man, but it did not sound like Mr. Scott's voice. I did not know him. He said he represented the International Life Insurance

Company. I know that my husband got the policy in Chicago. I do not know where it was delivered to him. I learned the fact that he had applied for the insurance .´ . . Mr. Scott does business for the International Life Insurance Company at Chicago and my husband did some business with him in the way of introducing applicants, and the door of the office had, 'Frank E. Lukens, Special Agent for the International Life Insurance Company.' "

The policy recites that it is "signed by its president and secretary at the Home Office of the company in St. Louis, Missouri," and further that it is issued "in consideration of the application herefor, which application is made a part hereof; the payment of $193 and 70/100 *in advance* on the *delivery* of this policy . . . and the further payment of a like amount either at the Home Office of the company at St. Louis, Missouri, or upon delivery of a receipt signed by the secretary and countersigned by an authorized agent of the company." It bears a certificate showing that in accordance with the general laws governing Missouri insurance companies it had been duly registered with the Missouri Insurance Department.

Looking at these facts in the light of their surrounding circumstances and absent other and countervailing testimony, we are of the opinion that the reasonable inference to be deduced therefrom is that the application was taken and the policy delivered in Chicago. The delivery of the policy was essential to the completion of the contract and was a prerequisite to an action thereon. By this we mean there must have been a final acceptance by both parties of the terms thereof, and in this case such final acceptance did not take place until the company presented the policy to the insured and he made payment and accepted it. These last and essential acts took place, as we view the record, in Chicago. Under such circumstances and the uniform law governing the subject, the contract was an Illinois contract, and this notwithstanding the fact that the appellant is a Missouri corporation with its chief offices in this State and that the

policy was signed by its officers and made payable at its home office. [Cravens v. Insurance Co., 148 Mo. 583; Horton v. Insurance Co., 151 Mo. 604; Lange v. Insurance Co., 254 Mo. 1. c. 503; Head v. Insurance Co., 241 Mo. 403; Insurance Co. v. Head, 234 U. S. 1. c. 155.]

Respondent, however, contends that this particular question has been judicially determined in another action between the same parties and that a decision therein conclusively determined it in her favor and against the appellant.

Res Adjudicata.

Following the death of the insured, the appellant here filed in the circuit court of Cook County, Illinois, wherein Chicago is located, a suit against the respondent in which it sought to compel specific performance of a certain agreement alleged to have been entered into by the parties and to enjoin the respondent here from commencing or prosecuting any action at law upon the policy now sued upon. The bill alleged the issuance and delivery of the policy; the Illinois residence of the insured and his wife; the death of the insured by suicide; and an oral agreement whereby respondent would receive the sum of $400 in full settlement, discharge and satisfaction of all her claims under and by virtue of the policy. It further alleged respondent's failure and refusal to carry out the terms of the contract and her threat to commence an action at law on the policy and thereby put it to great cost and expense in defending such action. It also alleged that in accordance with the suicide clause contained in the policy its actual liability thereon was $118.70, the amount paid by the insured in the way of premiums. The answer denied the alleged agreement and that the death of the insured was by suicide. It further alleged that the contract was finally ratified by the appellant company in the State of Missouri and was therefore governed by the laws of the State of Missouri; and that under such laws the suicide clause in the policy was wholly null and void. It then charged that the attorney representing the company and with whom the alleged oral agreement was made, was "an unusually capable and erudite lawyer and particu-

larly well qualified to determine the rights and liabilities of various parties under the terms of a contract or policy of insurance;'' and that said attorney had represented to her that the contract was an Illinois contract and must be accordingly interpreted, and that even if it were construed as a Missouri contract, the Missouri law eliminating suicide as a defense in a suit on an insurance policy, would be unavailable, since it applied only to citizens of Missouri. The answer further alleged that the complainant had a full, complete and adequate remedy at law and therefore was not entitled to maintain its cause in equity; that the alleged oral agreement was lacking in mutuality and was unconscionable, and for that reason specific performance should be denied.

After the issues were made the matter was referred to a master in chancery, who, after hearing the evidence, reported both his findings of fact and law. As a matter of fact it was found that the policy was delivered to the insured in Chicago by the company's local agent; that the insured executed a promissory note for $193.70 in payment of the first yearly premium and that subsequently $118.70 of this amount was actually paid; that the insured and his wife were at all the times mentioned citizens of Illinois and were not during any of said period citizens of Missouri; that there was pending at the time, in the State courts of Missouri, an action at law to enforce the payment of the full amount mentioned in the policy.

Upon these facts it was then declared, as a matter of law by the master, that the policy contract was executed in the State of Missouri and its construction subject to the laws of that State, and that in the action of law which it found was then pending in the State courts of Missouri, suicide could not be urged as a defense; that the complainant had an adequate remedy at law in case there was any just cause for not paying the full amount of the policy.

It was further found, both as a matter of fact and law, that no such legal agreement, as the bill alleged, had been

entered into—that it was lacking in mutuality, was without consideration and unenforcible. It then found that the equities of the case were with the respondent and that the complainant was not entitled to the equitable relief sought. Upon a consideration of the report and exceptions thereto the court found: "that the equities of this case are with the defendant and that the plaintiff is not entitled to the relief sought." The judgment then recites "that the complaint is dismissed for the want of equity."

At the time the findings in this case were made and the decree rendered, the case now under review was pending, and the master in that cause expressly found that complainant here had an adequate remedy in a case at law, such as is this, if there were any just cause for not paying the full amount of the policy.

We do not think that upon such a record the question here presented was so judicially determined as to make it *res adjudicata.*

This action did not involve the question of respondent's liability on the contract here sued upon; it was founded upon an alleged subsequent and independent agreement which itself was made the basis for the relief sought. If such agreement as was set out in the complaint was lawfully entered into as alleged, but which the master found was not the case, its validity did not depend upon whether the insurance policy was a Missouri or Illinois contract, or whether the company's original liability was the amount stated in the policy, as now contended by respondent, or the amount of the premiums paid, as contended by appellant.

Under the issues and findings of fact, the decision there could be quite correct without any regard to these questions of law. The relief sought was denied for want of equity and could properly have been so on the sole ground that in the suit here pending and which was then pending, the matters relied upon for equitable relief, were available as a legal defense. In fact this is particularly referred to by the master in connection with his finding that the complainant had an adequate remedy

at law.   The mere fact that the question of where the
contract was executed was reported upon by the master,
or even deemed by him of some importance in determin-
ing the issues there involved, does not amount to such
an adjudication thereof that in another suit based upon
another contract and where the issues are altogether
different, the same becomes conclusive.   It does not
affirmatively appear that the court concurred in the legal
conclusion of the master thus reported.   The proceedings
there were no more determinative of this question than
of each other issue which the pleadings in this case have
made.

The master's findings of fact clearly show the error of
his legal conclusion on where the contract was executed,
since such findings are such as to make the contract an
Illinois contract, but this is unimportant because in pass-
ing upon the plea of *res adjudicata,* the question is not
whether the court decided the point involved right or
wrong, but the test is—Do both actions embrace the same
issue, require the same evidence, and, though in different
form, call for substantially the same result?

We have carefully examined the cases cited by respond-
ent but find nothing therein contained which is in sub-
stantial conflict with the views here expressed.

II. We come now to the questions upon which this
case was largely determined *nisi.*   Section 6945, Revised
Statutes 1909, provides:

"In all suits upon policies of insurance on life here-
after issued by any company doing business in this
State *to a citizen of this State* it shall be no defense that

Suicide.   the insured committed suicide, unless it shall
be shown to the satisfaction of the court or jury
trying the cause that the insured contemplated suicide
at the time he made his application for the policy, and
any stipulation in the policy to the contrary shall be
void."

That part of the section which limits elimination of
suicide as a defense to policies issued to *citizens of this
State* and which declares that in policies so issued a
stipulation to the contrary is void, was held invalid,

while the remainder of the section was sustained and so construed as to deprive the insurer of that defense and to prohibit the insertion of a contrary clause in the policy, without any regard to where or to whom the policy was issued.

In so far as the question thus stated is involved in this action it is not difficult of solution. If the contract was an Illinois contract and by reason thereof governed by the laws of that State, as we hold, although the suit is brought in the courts of this State, none of the provisions of the section are applicable to respondent's case, nor available to her. The section when correctly construed is but an inhibition against making insurance contracts in this State and with citizens of this State whereby the insurer is relieved from liability in the event the insured commits suicide. The only right, privilege or immunity which it denies is the right to contract that in case of suicide the contract obligation shall not be effective, and this denial or abridgment extends only to the citizens of this State and insurers while contracting in this State. It does not deny to citizens of other States the right to contract with an insurer that such insurer shall be liable in case of suicide; it merely compels insurance companies when contracting in this State and with citizens of this State to eliminate from their contracts a certain provision, at the same time leaving citizens of other States entirely free to make such contracts in relation to the subject-matter as they deem proper. It but regulates a certain subject-matter between insurers and the citizens of this State without attempting to force such regulations upon others. It is not a natural right of any person, wherever living, to demand of an insurer indemnity against suicide merely because the insurer is willing to give insurance against death from other causes. Absent statutes to the contrary in the place where the contract is made this is legitimate subject-matter of contract. If the laws of the State where the contract is made do not deprive the parties of the right to limit liability to death from natural or accidental causes, the right to so

contract cannot be questioned and when exercised must be respected. If this provision abridges the privileges of any person it is the citizen of this State who is not allowed, even for a reduced premium rate, to secure a policy of life insurance containing a binding provision against suicide, although the citizens of other States are so permitted—but of this respondent cannot complain, because neither she nor the insured were of the class thus affected.

This statute and its application is in no sense similar to the statute dealt with in Blake v. McClung, 172 U. S. 239. That statute clearly offended against the Federal Constitution in that it gave priority to creditors who were residents of the State over all similar creditors residing elsewhere. It is, however, quite similar to the case of Chambers v. Railroad, 207 U. S. 142, in which the validity of the statute in question was sustained.

The Legislature of this State can prescribe the conditions under which corporations may be organized herein and may determine the territorial limits of their business operations. It has not, however, seen fit to restrict its insurance corporations (except certain local mutual companies) to any particular territory, but has left them free to enter and transact business in all States whose permission they may obtain. Save in exceptional cases and instances where certain provisions and requirements definitely inhere in their charters, the regulation of their transactions in other States is left to the laws of such States. By virtue of this, Missouri insurers are enabled to secure authority to do business in many States whose laws are different from ours and where they could not practically operate if our laws were of extra-territorial effect and governed their foreign relations.

It is evidently the policy of this State to leave the insurers which operate in other States on the basis of equality where the laws of such States place them. The State likewise has power to impose upon foreign corporations such conditions as it sees fit, this being but the correlative of its right to exclude them. It has not

seen fit to prescribe that either foreign or domestic insurance corporations shall make their contracts in other States in accordance with the laws which govern the subject in this State. The anti-discriminatory statute of this State does not undertake to prescribe the contingencies under which liability attaches on contracts made in other States. It does not prevent legitimate classification, nor require insurers to include in their policies under all circumstances the same provisions.

We are clearly of the opinion that this section does not violate section 2, article 4, or that part of section 1 of the Fourteenth Amendment to the Constitution of the United States, which provides that no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.

A more interesting and difficult question would arise had this contract been executed within this State and while the insured was within the State's jurisdiction, although not one of its citizens. That part of the Federal Constitution which prohibits a State from denying to any person within its jurisdiction the equal protection of its laws would under such circumstances become of serious consideration. In the instant case, however, it is unnecessary for us to deal with this phase, since the record before us does not involve the same and a decision thereon is not material to a determination of the cause.

The court erred in sustaining the objection to the testimony tending to show that the insured committed suicide within one year from the time the insurance began and in holding that the provision in question was unconstitutional when applied to the facts of this case.

The judgment is therefore reversed and the cause remanded. All concur except *Bond, J.,* who dissents.