THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Respondent, v. SOPHIA M. WIEGMANN, Appellant.

St. Louis Court of Appeals.    Opinion Filed December 4, 1923.

1. **INSURANCE: Life Insurance: Conditional Receipt for First Premium Issued: Fraudulent Statements by Insured: Cancellation of Policy: Forfeiture.** Where the application for a policy of insurance provided that the proposed policy should not take effect unless and until the first premium had been paid and the policy delivered during insured's good health, except in the case of the issuance of a conditional receipt, and the application recited that the insured had paid a cash sum and received a conditional receipt making the insurance in force from that date if the application should be approved and the policy issued, such provision merely had the effect of making the policy, if finally issued, effective from the date of the application rather than from the date of the delivery of the policy, and the issuance of such conditional receipt did not preclude the insurer, in a proceeding to cancel the policy, from introducing evidence of fraudulent misstatements made by insured in the application.

2. ———: ———: **Lex Loci: Policy Illinois Contract: Validity and Construction Determined by Law of that State.** Where a contract of insurance is an Illinois contract, the validity and construction thereof are matters to be determined by the law of that state if pleaded and proved.

3. ———: ———: **Death of Insured: Fraud in Procuring Policy: Cancellation: Equity: Rule in Missouri.** Under the decisions of Missouri, as a general rule, an insurance company cannot maintain a suit in equity to cancel a policy of insurance after the death of the insured, on the ground of fraudulent representations on the part of insured in the procurement of the insurance; and an action brought by the beneficiary on the policy cannot be converted into a suit in equity by a cross-bill setting up such misrepresentations and praying for a cancellation of the policy.

4. ———: ———: ———: ———: ———: **Illinois Policy: Equity: Right to Invoke Equitable Relief.** Where the contract of insurance is an Illinois contract, and under the law of that State the incontestable clause of the policy, making it incontestable after a period of two years, is construed to operate to foreclose the in-

surer's right to defend on the ground of misrepresentations un-less the insurer takes some steps to assert its rights in the prem-ises during such period of two years, though the insured dies during such period, *held* that where the insured died within such period and the beneficiary had brought no action on the policy at the date of the institution of the present suit, at which time the said period of two years had nearly elapsed, such suit, being one in equity to cancel the policy for alleged false representations in its procurement, could be maintained in the courts of this State as one of equitable cognizance.

5. ———: ———: **Equity: Decree Cancelling Policy: Evidence: Suffi-ciency.** Where the contract of insurance is an Illinois contract, and the undisputed evidence shows that the insured made false representations in his application for the insurance, to the effect that he had undergone no surgical operation since childhood, had not consulted a physician for a period of five years prior thereto, and that he had never been under treatment at a hospital, which statements of the insured, under the law of Illinois, were *material* representations, and where the insurance company, in reliance thereon, issued and delivered the policy, the company is entitled to have the contract annulled upon tender of the premiums paid thereon.

6. **CONTRACTS: Annullment for Fraud: Evidence: Must be Clear, etc.** To authorize the annullment of a contract for fraud, the evidence thereof must be clear, cogent, and convincing.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. J. Hugo Grimm*, Judge.

AFFIRMED.

*S. C. Rogers* for appellant.

*Fordyce, Holliday & White* for respondent.

*Frederick L. Allen*, of counsel.

(1) If appellant is insisting on her first assign-ment of error, namely, that she was entitled to a jury trial, then this appeal involves a constitutional question and this court has no jurisdiction. Const. of Mo., art.

VI, sec. 12; State ex rel. v. Smith, 141 Mo. 1; Collins v. German, etc., Assoc., 85 Mo. App. 242. (2) The insured applied for this policy in Illinois, paid the first premium in Illinois and the policy was delivered to him in Illinois; therefore, it was an Illinois contract and subject to the laws of Illinois. Thompson v. Traders Ins. Co., 169 Mo. 12; Lange v. Ins. Co., 254 Mo. 488; Lukens v. Ins. Co., 269 M o. 574; Hamilton v. Darley, 266 Ill. 542. (3) The law of . linois before, at the time of, and since the issuance of the policy provided that said policy was incontestable for any reason except nonpayment of premiums after two years from its date, and even if insured died within that period and the company denied liability, the company would lose its right to defend on the ground of fraud or misrepresentation if it did not take affirmative action to cancel the policy within the two-year period. Monahan v. Metropolitan Life Ins. Co., 283 Ill. 136; Ramsey v. Old Colony Ins. Co., 297 Ill. 192; Ill. Act of May 20, 1907, section 3, Hurd's R. S. Ill. 1919, page 1739, ch. 73, sec. 208, sec. 1, par. 3; Lavelle v. Metropolitan Co., 209 Mo. App. 330. (4) The misrepresentations made by insured in this case were knowingly made and material, and the finding of the trial court was amply supported by the evidence and should be affirmed. Coscarella v. Ins. Co., 175 Mo. App., 130; Lewis v. Ins. Co., 201 Mo. App., 48; Metropolitan v. Moravec, 214 Ill. 186; Crosse v. Supreme Lodge, 254 Ill. 80; Spence v. Central Co., 236 Ill. 444; Schuermann v. Ins. Co., 165 Mo. 641; Pacific Mutual v. Glaser, 247 Mo. 377; Certer v. Metropolitan, 275 Mo. 84; Daudt v. Deiert, 205 S. W. 222.

ALLEN, P. J.—This is a suit in equity instituted by the plaintiff insurance company on November 2, 1921, to cancel a policy of insurance in the sum of $5000 issued by plaintiff, on November 5, 1919, on the life of David H. Wiegmann, wherein the defendant, Sophia M. Wiegmann, then the wife of the insured, was named as beneficiary.

The petition alleges that the policy was issued to Wiegmann in O'Fallon, Illinois, where the application therefor was made by him, and that in such application he agreed as follows:

"All the following statements and answers, and all those that I make to the Company's Medical Examiner, in continuation of this application are true, and are offered to the Company as an inducement to issue the proposed policy. I expressly waive, on behalf of myself and of any person who shall have or claim any interest in any policy issued hereunder, all provisions of law forbidding any physician or other person who has attended or examined me, or who may hereafter attend or examine me, from disclosing any knowledge or information which he thereby acquired. The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall have been delivered to and received by me during my continuance in good health."

The petition then charges that as a part of his application for the policy signed by him and attached to the policy and made a part thereof, Wiegmann, in answer to certain questions propounded to him by plaintiff's medical examiner, represented, among other things, that he had had no illnesses, diseases, injuries or surgical operations since childhood; that he had not been prescribed for nor treated nor had he consulted any physician or practitioner for the past five years; that he had never been under treatment at any hospital, asylum, cure or sanitarium. It is then averred that plaintiff, believing and relying upon the truthfulness of such representations and in consideration of the agreements contained in said application and the premium paid, and without knowledge of the falsity of any of said answers, issued the policy, by the terms of which the policy and the application attached thereto constituted the entire contract between the parties. Alleging the delivery of the policy to Wiegmann, and the payment of certain premiums by him, it is alleged

that Wiegmann died in the City of St. Louis, Missouri, on January 25, 1921; that proofs of death were furnished by the defendant on or about February 7, 1921; that from information contained in said proofs of death and the attending physician's certificate, plaintiff, through investigation, learned for the first time, of the falsity of the representations made by the insured in the application; that such representations were false and known to Wiegmann to be false; that he was then suffering from cancer which afterwards caused his death; that he had been treated by physicians and surgeons during the five years prior to said application; that a surgical operation had been performed upon him within said period and he had been under treatment at a sanitarium or hospital; and that had plaintiff known of such false representations it would not have issued nor delivered the policy. And it is alleged that upon discovering said facts plaintiff denied all liability on the policy, and, on or about April 28, 1921, tendered to defendant the premiums paid thereon with interest, which tender defendant declined.

It is then alleged that plaintiff has no adequate remedy at law and will suffer irreparable injury unless afforded relief in equity for the reason that the policy was applied for by and issued and delivered to Wiegmann while he was a resident of Illinois, and became an Illinois contract, governed by the laws of that State, and contains a clause providing that it shall be incontestable after two years from the date of its issuance except for the non-payment of premiums. And a statute of Illinois, in force at the time, is pleaded, providing that a policy of life insurance and the application attached thereto and made a part thereof shall constitute the entire contract between the parties and shall be incontestable two years from its date except for non-payment of premiums, etc. And it is alleged that the highest court of Illinois, in decisions pleaded, has held that such incontestable clause of a policy of life insurance inures to the benefit of the beneficiary after the death of the insured; that the rights of

the parties thereunder do not become fixed as of the date of the death of the insured; and that in order to avoid the policy for fraudulent representations the insurer must take steps to assert its claim within the two-year period, even though the insured does not survive such period. And it is averred that under such decisions plaintiff would be precluded from making any defense to an action on the policy after a period of two years from the date of its issue, i. e. after November 4, 1921; that defendant has not instituted any action on the policy, and plaintiff is informed and believes that defendant intends to delay instituting action thereon until after November 5, 1921, in order to foreclose plaintiff from defending such action on the grounds set forth in plaintiff's petition.

Averring tender and deposit in court of the premiums paid, with interest, plaintiff prays that the policy of insurance be declared void and that defendant be required to surrender the same for cancellation, and for general relief.

Defendant filed a lengthy answer, but we need only notice certain averments thereof. It sets up a provision of the application as follows:

"The proposed policy shall not take effect unless and until the first premium shall have been paid during my continuance in good health, and unless also the policy shall have been delivered to and received by me during my continuance in good health; expect in case a conditional receipt shall have been issued as hereinafter provided.

"I have paid $91.35 in cash to the subscribing soliciting agent and received a conditional receipt therefor, signed by the Secretary of the Company, making insurance in force from this date, provided this application shall be approved and policy duly issued."

And it is alleged that a conditional receipt was issued to the insured by plaintiff.

The answer then charges, among other things, that under the law of Illinois, and particularly under the de-

cision in Joseph v. Life Insurance Co., 219 Ill. App. 452, the answers made by the insured in his statements to plaintiff's medical examiner are not a part of the application and constitute no part of the contract of insurance; that under the law of Illinois, and particularly under certain decisions of the courts of that State pleaded, representations in an application for a policy of insurance must relate to matter material to the risk in order to be available as a defense, and it must be alleged and shown that such representations were not only false and fraudulent but that the insured so knew at the time they were made, and that these matters are questions of fact for a jury to determine. And it is averred that the representations alleged by plaintiff to have been made by the insured to plaintiff's medical examiner did not relate to a matter material to the risk, were not false or fraudulent, nor were they known by the insured to be false or fraudulent; and that the insured did not then have the disease of which he subsequently died. It is also alleged that after the insured signed the application plaintiff made an independent investigation of his physical condition, habits, etc., and both plaintiff's agent who solicited the policy and plaintiff's medical examiner knew the insured's physical condition and the facts regarding his health; and that under the law of Illinois, as shown by decisions of the courts of that State pleaded, plaintiff, under such circumstances, will not be permitted to avail itself of a false or erroneous statement in the application as a ground for forfeiting the policy.

Coupled with this answer, as a cross-bill, is a statement of a cause of action in plaintiff's favor on the policy, praying judgment for the amount of the policy, with interest, together with damages and attorneys fees as for vexatious refusal on the part of defendant to pay the loss.

Plaintiff made proof of the pertinent facts alleged in its petition. It will not be necessary to recite all thereof in detail. It was shown that in his application, made a part of the contract of insurance, the insured made the

statements alleged in the petition. And plaintiff adduced evidence tending to show that such statements were false and fraudulent and known by the insured to be so.

The testimony adduced by plaintiff goes to show that early in June, 1918, Weigmann, who then resided at O'Fallon, Illinois, upon the advice of his physician, Dr. Trippel, of O'Fallon, came to St. Louis and, in company with Dr. Trippel, consulted Dr. Marchildon, of that city, who examined him and upon whose advice the insured entered the Alexian Brothers Hospital in that city on June 5, 1918, where, on the following day, he was operated upon by Dr. Marchildon. Dr. Marchildon's testimony is that he found the insured had a varicocele and a small tumor of the scrotum which he operated on and removed. He testified that he made a microscopic diagnosis of the tumor and found it was of a cancerous nature; that he told the insured thereof and of the results of cancer and that the mere excision of the tumor was not enough; that the assured should be further operated upon—should undergo a radical operation. He said that because of the probability of a recurrence of the cancerous condition he explained to the insured that it would be necessary to remove the scrotum and the glands in both groins and thighs, but that the insured would not submit thereto. And the witness testified that to the best of his recollection he told Dr. Trippel that the insured had a cancer, and urged Dr. Trippel to urge the patient to submit to a radical operation.

It further appears from the evidence adduced by plaintiff that on December 2, 1919, less than one month after the issuance of the policy, the insured was again taken by his physician, Dr. Trippel, to St. Louis where he was operated on, at the Lutheran Hospital in that City, by Dr. Bonnot. Dr. Bonnot's testimony is to the effect that he operated upon the insured for a "chrondrosarcoma, or cartilaginous sarcoma, a form of cancer," located in the left groin; that he removed the cancer as far as the bone, scraped the bone and cauterized it. When asked if the insured gave "the history of how long he had been

suffering from any pain or trouble in this part,'' the witness said: ''He told me he had this little tumor on his scrotum about a year before; and also dated his pain to about a month previous to the time I saw him.''

Dr. Morrish, of St. Louis, testified that the insured came to him in February, 1920; that he examined the patient and found him suffering from a cancerous condition in the left groin involving the scrotum with subsequent involvement of the intestines; that he attended the insured until the latter's death, on January 25, 1921, and made up the proofs of death wherein he gave the cause of death as cancer, and also prepared a report to the Missouri State Board of Health, a certified copy of which was in evidence, in which he gave the cause of death as cancer of the inguinal gland, involving thigh, liver and intestines.

One Yearwood, plaintiff's agent who solicited the insurance, and Dr. Bechtold, plaintiff's medical examiner who made an examination of the insured, in the course of which the latter made the statements pleaded in the petition, both testified that they had no knowledge that the insured had previously been to St. Louis for an operation.

When plaintiff introduced the policy, with the application attached thereto, defendant objected to the introduction of any further testimony on the ground that under that clause of the application pleaded in the answer and quoted above, since it appeared that a conditional receipt had been issued, the contract of insurance became an absolute one, not subject to be forfeited on the ground that the insured was not in good health. This objection was overruled, defendant excepting.

It is unnecessary to notice the testimony for defendant at any great length. Dr. Trippel, as defendant's witness, testified that Dr. Marchildon told him that he had not made a pathological examination of the tumor which he removed, but said that he ''suspected that it might be an epithelioma,'' a species of cancer, and advised the witness to keep the patient under observation; and that

Dr. Marchildon said that he had not told the insured what he suspected.

Defendant also introduced the testimony of a number of witnesses living in O'Fallon who knew the insured and who knew that he came to St. Louis in 1918 for an operation.

It is unnecessary to here refer to the various decisions of the courts of Illinois introduced in evidence.

The learned trial judge found the issues in favor of plaintiff and entered a decree canceling the policy; and from this judgment the defendant has appealed to this court.

## I.

The first assignment of error made by defendant, appellant here, is that the court erred in refusing appellant a jury trial. It is not clear from this record that appellant insisted upon a jury trial below, but in any event it is sufficient to say that upon a hearing of the cause in this court defendant's counsel in open court waived the question sought to be raised by this assignment of error.

## II.

The second assignment of error is that the court erred in overruling defendant's objection to the introduction of further testimony after a showing of the issuance of a conditional receipt. The argument in support of this assignment is rather specious than logical. The clause of the application relied upon in this connection, set out in the answer and shown above, was obviously intended merely to provide that where the premium is paid upon making the application, and a conditional receipt is issued therefor, the policy, if finally issued, is to become effective from the date of the application, rather than to take effect from the date of the delivery of the policy as thereinabove provided.

There is clearly no merit in this assignment.

## III.

The remaining assignments of error challenge the propriety of the decree below canceling the policy

under the evidence adduced. Touching this matter we may say, *in limine,* that it cannot be doubted that the contract of insurance is an Illinois contract, and that consequently the validity and construction thereof are matters to be determined by the law of that state if pleaded and proved. [See Lange v. Life Insurance Co., 54 Mo. 488; Lukens v. International Life Ins. Co., 269 Mo. 574, 191 S. W. 418; Hamilton v. Darley, 266 Ill. 542.] And this matter, in the case before us, is one affecting not only the rights of the parties under the contract, but having to do as well with the question of the right of this plaintiff to invoke the aid of a court of equity of this State for the purpose of obtaining a cancellation of the policy under the circumstances present.

Under the decisions of this State it may be stated, as a general rule, that an insurance company cannot maintain a suit in equity to cancel a policy of life insurance after the death of the insured, on the ground of fraudulent misrepresentations on the part of the insured in the procurement of the insurance; and that an action brought by the beneficiary on the policy cannot be converted into a suit in equity by a cross-bill setting up such misrepresentations and praying for a cancellation of the policy. [See State ex rel. v. Trimble, 192 Mo. 371, 239 S. W. 467; Schuermann v. Union Central Life Ins. Co., 165 Mo. 641, 65 S. W. 723; Cradick v. John Hancock Life Ins. Co., decided by this court at this term (No. 18340), not as yet reported.] The reason for this rule is that under our law there is ordinarily no occasion for an insurer to resort to equity for a cancellation of the policy after the death of the insured, as will appear from the reasoning of the cases cited. However, under the law of Illinois applicable to the contract of insurance in hand, as shown by the decisions of the courts of that State pleaded and proved by plaintiff, in a case of this character, where the death of the insured occurs within less than two years after the issuance of the policy, the incontestable clause thereof is construed, nevertheless, to operate to forclose

the insurer's right to defend on the ground of misrepresentations unless the insurer takes some steps to assert its rights in the premises during such period of two years after the issuance of the policy. [See Monahan v. Metropolitan Life Ins. Co., 283 Ill. 136; Ramsey v. Old Colony Life Ins. Co., 297 Ill. 192.] [See, also Lavelle v. Metropolitan Life Ins. Co., 209 Mo. App. 330, l. c. 336, 238 S. W. 504.] This being true, it seems entirely clear that, under the circumstances here present, the only relief available to the insurer is that afforded by a court of equity. Though plaintiff denied liability on the policy in April, 1921, the defendant beneficiary had brought no action on the policy at the date of the institution of this suit, viz., November 2, 1921, at which time the said period of two years had nearly elapsed. And in order that its right to invoke the aforesaid alleged misrepresentations as a ground for forfeiting the insurance might not be forever foreclosed and lost to it, plaintiff instituted this suit in equity for a cancellation of the policy. Clearly the case presented is one of equitable cognizance.

And it cannot be doubted, we think, that the evidence adduced warranted the decree below canceling the policy. Under the law of Illinois, pleaded and proved, the written application for the insurance, including the insured's answers to the medical examiner, signed by the insured and attached to the policy, became a part of the contract of insurance. [See Sec. 208-U, Chapter 73, Hurd's Revised Statutes of Illinois, 1919, p. 1739.] Touching this matter the decision in Joseph v. New York Life Ins. Co., 219 Ill. App. 452, pleaded in the answer, does not aid defendant. The said representations of the insured, to the effect that he had undergone no surgical operation since childhood, had not consulted a physician for a period of five years prior thereto, and that he had never been under treatment at a hospital, are shown by the undisputed evidence to have been false. And in the light of the evidence adduced it cannot be doubted that the insured knew that such representations were false when made.

214 M. A.—5

And in this connect' ᵥ we may say that there is clearly no merit in the contention that plaintiff, through its soliciting agent and its medical examiner, was so far informed as to the true facts regarding the physical condition of the insured as to preclude it from setting up such misrepresentations as ground for the cancellation of the policy.

Since the contract is one governed by the law of Illinois, our misrepresentation statute, supra, has no application to the case in hand. [See Coscarella v. Metropolitan Life Ins. Co., 175 Mo. App. 130, 157 S. W. 873; Lewis v. New York Life Ins. Co., 201 Mo. App. 48, 209 S. W. 625.] And under the law of Illinois the aforesaid statements of the insured in his application for the insurance were material representations. [See Metropolitan Life Ins. Co. v. Moravec, 214 Ill. 186; Crosse v. Knights of Honor, 254 Ill. 80.] And if, as an inducement to the issuance and delivery of the policy, the insured knowingly made false statements with respect to the matters mentioned, and in reliance thereon plaintiff issued and delivered the policy, as the evidence shows, plaintiff is entitled to have the contract annulled upon a tender of the premiums paid thereon.

It is quite true that to authorize the annullment of a contract for fraud the evidence thereof must be clear, cogent and convincing. But in the instant case the proof, we think, fully meets the requirements of this rule. The judgment should accordingly be affirmed, and it is so ordered. *Becker* and *Daues, JJ.,* concur.