Katherine R. MILLER,
Plaintiff–Appellant,

v.

The HOME INSURANCE COMPANY,
Defendant–Respondent.

No. 61363.

Supreme Court of Missouri,
En Banc.

Sept. 9, 1980.

Rehearing Denied Oct. 15, 1980.

W. Ray Daniel and B. H. Clampett, Springfield, for plaintiff–appellant.

Ray Whiteaker, Russell G. Clark, Springfield, for defendant–respondent.

RENDLEN, Judge.

Judgment was entered on a verdict for Home Insurance Company in plaintiff's action seeking benefits under a group accident insurance policy as a result of her husband's death. Plaintiff appeals, contending she was entitled to a directed verdict because as a matter of law the policy, construed in light of § 376.620, RSMo 1969,[1] afforded coverage. Following affirmance by the Court of Appeals, Southern District, the cause was transferred and is determined here as though on original appeal. Mo.Const., art. V, § 10.

---

1. Section 376.620 provides:

In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void.

Katherine Miller, widowed by her husband's suicide in 1973, sued to recover the $50,000 death benefit as designated beneficiary of a group accident policy issued by the Home Insurance Company to her husband's long time employer, A.P. Green Refractories. At the time of his death Mr. Miller was a "covered person" under the policy which contemplated benefits for losses resulting from accidental injuries,[2] but by amendatory endorsement excluded from coverage, "intentionally self–inflicted injuries, suicide or any attempt thereat, while sane or insane (in Missouri, while sane)."

At trial, plaintiff advanced a theory that the accident insurance policy terms, properly construed, included the risk of suicide while *sane* or *insane* and because it was conceded the death resulted from a self–inflicted gunshot wound, plaintiff should recover as a matter of law. The jury, however, by its verdict found Miller sane at the time of death[3] necessarily rejecting plaintiff's contention that death occurred while insane and that because of the insanity the death was accidental. Plaintiff was thus limited to a position that suicide while sane was intended to be considered an accidental injury and a covered risk within the policy terms, and the endorsement excluding coverage for such death is effectively voided by the provisions of § 376.620. As stated in plaintiff–appellant's brief, "Respondent Is Precluded by Sec. 376.620, V.A.M.S., From Invoking [the] Exclusion . . . to Defeat the Coverage Thereof." Rejecting this contention the trial court denied plaintiff's motion for directed verdict.

At the outset we must decide whether the law of Missouri or Alabama governs. Miller, a long time resident of Alabama on the date of his death, was employed as Southeast Regional Sales Manager for A.P. Green Refractories Company. However, the A. P. Green Company was headquartered in Mexico, Missouri and it is undisputed that the policy was issued and apparently delivered to the company as the group policyholder at its home office in Mexico.[4] In its answer, defendant alleged the policy of insurance "was a Missouri contract controlled and governed by Missouri law, but that under Missouri law the substantive law of the State of Alabama will govern defenses hereinafter asserted by defendant."

Defendant urges application of the "most significant relationship" test[5] to resolve the choice of law question and in the application of that test the law of Alabama should govern. This, defendant argues, ends the matter, as suicide exclusions are valid under the law of Alabama. *Kiley v. Pacific Mutual Life Insurance Co.*, 237 Ala. 253, 186 So. 559, 565 (1939). Plaintiff counters that Missouri has never adopted the most significant relationship test for contract cases but if it were applied here, Missouri law (including the suicide statute, § 376.620) would nevertheless govern. See Restatement (2d) of Conflict of Laws, § 192 and Comment h (1971).

Missouri has consistently adhered to lex loci contractus analysis in determining whether to apply § 376.620 and its predecessor statutes to contracts of insurance. *Whited v. National Western Life Insurance Co.*, 526 S.W.2d 364, 368 (Mo.App. 1975); *Bearup v. Equitable Life Assurance Society*, 351 Mo. 326, 172 S.W.2d 942, 946 (1943); *Fields v. Equitable Life Assurance Society*, 118 S.W.2d 521, 523 (Mo.App. 1938); *Lukens v. International Life Insurance Co.*, 269 Mo. 574, 191 S.W. 418, 419 (1917), appeal

---

**2.** The policy provided: " 'Injury' means accidental bodily injury sustained by a Covered Person during the term of this Policy . . ."

**3.** Plaintiff's main verdict directing instruction, read in pertinent part as follows: "Your verdict must be for plaintiff if you believe that Edwin C. Miller was insane at the time he shot himself on April 3, 1973 . . . ."

**4.** Defendant–respondent admits in its brief, "[T]he policyholder in this case was the A. P. Green Refractories Company. This was the insuring agreement through which coverage was afforded to Edwin C. Miller. The certificate of insurance [mailed to Miller in Alabama] clearly provided that it was not a contract of insurance."

**5.** See Restatement (2d), Conflict of Laws § 188 (1971).

dismissed 248 U.S. 596, 39 S.Ct. 182, 63 L.Ed.2d 438 (1919).

With respect to group insurance policies, it is the majority rule that the law of the state where the master policy is delivered controls in choice of law questions. See Annotation: Group Insurance—Conflict of Laws, 72 A.L.R.2d 695, 696. Though we decline defendant's invitation to adopt the Second Restatement's "most significant relationship test" for such cases, it is recognized under that test, that in the absence of an effective choice of law clause in the policy, generally the state where the employer has his principal place of business will supply the governing law to group life insurance contracts; not the law of the place where the employee is domiciled and receives the certificate. Restatement (2d), Conflict of Laws, § 192, Comment h (1971). Hence under either approach, Missouri law would govern. In addition, application of Missouri law furthers uniformity in the interpretation of group accident insurance policies with accidental death benefits. Were it otherwise, the scope of protection afforded the insured and the liability of the insurer could change through the various states in which certificate holders might reside. The master policy provides in the "General Provisions," that it is amended to conform to the requirements of statutes of the state where the policy is delivered, in this case Missouri,[6] and from this it must be said that application of Missouri law is consonant with the reasonable expectations of the parties to the contract. Accordingly, the issues are to be determined under the law of Missouri.

Turning to the principal issue, plaintiff while conceding that *"suicide while sane"* has not been regarded under Missouri law as an accidental bodily injury when construing such policies, *Brunswick v. Standard Accident Insurance Co.,* 278 Mo. 154, 213 S.W. 45 (1919); *Aufrichtig v. Columbian National Life Insurance Co.,* 298 Mo. 1, 249

S.W. 912 (1923); *Fields v. Equitable Life Assurance Society,* 118 S.W.2d 521, 523 (Mo. App. 1938), nevertheless contends that suicide while sane is a covered risk within the phrase "accidental bodily injury" in the policy before us. Plaintiff would accomplish this result and circumvent previous Missouri holdings that suicide while sane is not an accidental injury by imposing on the policy's coverage language, the terms of the exclusionary endorsement. She argues that suicide while sane is a covered risk because Home Insurance Company attempted to exclude it. See exclusion, *supra.* Reasoning on the premise that if excluded it was covered, plaintiff then asserts the *exclusion* is invalidated by our suicide statute, § 376.620.

We cannot accept this reasoning. First, no Missouri case has been suggested which holds that an exclusionary clause standing alone endows coverage. See *Transport Indemnity Co. v. Teter,* 575 S.W.2d 780, 784 (Mo.App. 1978). Next, were we to favor this argument, the exclusionary clause would incongruously be given effect to provide coverage but not to limit liability. It would be necessary to assume the parties intended to broaden coverage by the device of an amendatory exclusion, which they knew from the statute and prior case law was effectively voided. Further, when the policy's coverage terms are unambiguous, the canons of construction constrain our reshaping the instrument in the manner urged. See *State Farm Mutual Automobile Insurance Co. v. Universal Underwriters Insurance Co.,* 594 S.W.2d 950, 954 (Mo.App. 1980); *Moskowitz v. Equitable Life Assurance Society,* 544 S.W.2d 13, 20 (Mo. banc 1976). It is settled law that the phrase "accidental bodily injury" does not include suicide while sane, see Couch on Insurance 2d, § 41.196 and numerous Missouri cases cited, and we conclude that suicide while sane was not a covered risk within this group policy of insurance before us. As there was no coverage, the effect of the exclusionary clause and of

---

**6.** The master policy "GENERAL PROVISIONS" are in pertinent part: "Conformity with state statutes: Any provision of this Policy which, on its effective date, is in conflict with the statutes of the state in which this Policy is *delivered* is hereby amended to conform to the minimum requirements of such statutes." (Emphasis added.)

§ 376.620 are irrelevant to a determination of the cause.[7]

Judgment is affirmed.

DONNELLY, SEILER, WELLIVER, MORGAN and HIGGINS, JJ., concur.

BARDGETT, C. J., dissents in separate dissenting opinion filed.

BARDGETT, Chief Judge, dissenting.

I respectfully dissent. The policy in issue provided for payment to the named beneficiary a specified sum of a "covered person" dies as a result of accidental bodily injury. This is an insurance policy on the life of those covered by it regardless of what the respondent calls it. The matter of *suicide* has been directly dealt with by the Missouri General Assembly with respect to insurance on a person's life.

Section 376.620, RSMo 1969, provides:
"In all suits upon policies of insurance of life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

In my opinion, when the event insured against is death then § 376.620 is controlling when the mechanism of death is suicide; and it applies whether the policy is called a group accident insurance policy, ordinary life insurance, or any other name. I would reverse and direct that judgment be entered in favor of appellant.

---

7. Our decision does not affect validity of those cases which hold that suicide while insane is an accidental bodily injury for which § 376.620 forbids exclusion. See *Sommer v. Metropolitan Life*, 449 S.W.2d 644 (Mo. banc 1970).