HEANEY, Circuit Judge.
 

 Mildred Nash was injured in an automobile accident. Her employer, Krivaja Beechbrook Corporation (Krivaja), subsequently terminated the group health plan that provided her with hospital and medical coverage. The insurer Metropolitan Life Insurance Company (Metropolitan), offered her a conversion policy that provided some of the same benefits as the policy her employer had formerly maintained.
 

 Nash filed suit against Krivaja and Metropolitan alleging various violations of ap-pellees’ fiduciary obligations under the Employee Retirement Income Security Act, 29 U.S.C. § 1001
 
 et seq.
 
 (ERISA). The district court granted the appellees’ motions for summary judgment on all counts. Nash appeals arguing that Krivaja’s and Metropolitan’s actions were arbitrary and capricious, and that Metropolitan’s conversion policy did not conform to state law. We affirm the district court and agree that there were no ERISA violations. We defer to the district court’s judgment that the conversion policy did not violate Missouri law.
 

 I. FACTS
 

 Mildred Nash had been employed at Kri-vaja since November 1, 1982. By October, 1985, she was the office manager of their North Kansas City office. That month she was involved in an automobile accident resulting in partial paralysis and mental impairment. She is unable to return to work.
 

 She made a claim for medical benefits under the employee benefit plan provided, paid for, and administered by Krivaja through Metropolitan. The plan provided
 
 *1055
 
 that coverage ceased when active work as an employee ended. For any employees not actively employed due to sickness, injury, leave or lay-off, coverage would continue until employment was terminated by the employer — and in no event could coverage continue more than twelve months after the sickness or injury began.
 

 On the anniversary date of the group policy, April 1, 1986, Metropolitan advised Krivaja that the premiums for health coverage would increase 29%, in part because of the claims made by Nash. Krivaja subsequently negotiated a compromise whereby Nash would be dropped from coverage and the premium would only increase 19%. Her coverage was ended effective April 30. She, however, was not notified by Krivaja until June 30. The letter from Krivaja admitted that she was terminated only to save money. Nash obtained a conversion policy from Metropolitan covering certain hospital and surgical expenses. She has paid the premiums for this new policy but has continued to file claims under the old employee benefit policy. She alleges that more than $20,000 in claims she has submitted have not been paid under the new policy.
 

 She filed suit alleging violations of fiduciary and statutory obligations under ERISA (Count I), seeking punitive damages for the same (Count II), seeking injunctive relief (Count III), and asserting a breach of contract claim against Metropolitan which the district court treated as an ERISA claim (Count IV). Summary judgment for the defendants was granted on Count II in April of this year. In May, the district court heard argument on Krivaja’s and Metropolitan’s motions for summary judgment on the remaining counts, and granted the motions.
 
 Nash v. Krivaja Beechbrook Co.,
 
 Memorandum Opinion (No. 87-0698-CV-W-5, May 17, 1988). Nash appeals the dismissal of Counts I, III and IV.
 

 II. DISCUSSION
 

 On appeal, Nash alleges: the employer’s decision was motivated by a desire to save money and violated a duty to administer the plan for the sole benefit of the employees; the plan allowed arbitrary and capricious terminations; and the conversion plan did not conform to Missouri law thus violating Nash’s right to the same coverage. The first two contentions are without merit and we will consider them only briefly.
 

 A. Fiduciary Duties under ERISA
 

 Assuming the facts favorably to the non-moving party, there was evidence that the sole motivating factor for the termination of Nash’s coverage was the desire to save money. The President of Krivaja wrote Nash, “[w]e would keep you even longer if Metropolitan Life Insurance would not have increased our rates (because of your case) and did not intend to increase their rates in the future.” While Nash admits that Krivaja could have terminated her under the policy for being unable to return to active work, she argues that her inability to return to work was not the basis of the employer’s decision. Basing the decision on cost thus violates 29 U.S.C. § 1104 which creates a duty to administer the plan in the interests of the participants.
 

 The district court disagreed. The district court properly relied on
 
 DeGeare v. Alpha Portland Industries, Inc.,
 
 837 F.2d 812 (8th Cir.1988), which reviewed the decision of a plan administrator only for arbitrariness or capriciousness.
 
 Accord Quinn v. Burlington Northern,
 
 664 F.2d 675, 678 (8th Cir.1981). Strict compliance with the terms of the plan prevents a finding of arbitrary action.
 
 Hickman v. Tosco Corp.,
 
 840 F.2d 564 (8th Cir.1988). Thus, insofar as the employer had the discretion to discontinue Nash’s benefits anyway because she was unable to return to work, the district court correctly concluded that the employer’s decision was not arbitrary and capricious.
 

 B. The Conversion Plan
 

 In the event the employee plan was discontinued, the plan allowed an employee to select another coverage “of the type specified above under one of the types of policies then being issued by the Insurance Company for individuals whose insurance has ceased * * The discontinued plan
 
 *1056
 
 provided more comprehensive coverage than the conversion policy Nash selected of those available. Nash argues that it is unfair to let Metropolitan decide what plans are of the same “type,” and that this contract term allows arbitrary decision-making. Further, on appeal, Nash argues that this contract term does not conform to Missouri law. The oral argument focused on which state law applied to determine the adequacy of the conversion clause.
 

 First, the district court decided that Metropolitan acted within the meaning of the contract; thus, there was no breach of their duty.
 
 See Burlington Northern, supra
 
 (deference for the plan administrator’s interpretation of the contract). Next, the district court considered whether the conversion plan was inadequate under state law.
 

 Initially, the court recognized that for Missouri insurance law to apply, the policy must have been “delivered or issued for delivery” in Missouri. Mo.Rev.Stat. § 376.397. Relying on the stipulation of the parties, the district court found that this policy “was issued to Krivaja through a trust located in Washington, D.C., and that the plan description booklets were issued and delivered to Krivaja at its home offices and headquarters in New Jersey.” Mem.Op. at 17. Thus, the district court correctly held that Missouri insurance law did not apply.
 

 The district court went on to note that its conclusion with regard to the applicability of section 376.397 was bolstered by the choice of law decisions of the Missouri Supreme Court.
 

 In
 
 Miller v. Home Insurance Co.,
 
 605 S.W.2d 778, 780 (Mo.1980) (en banc), the Missouri Supreme Court held that “the law of the state where the master policy is delivered controls in choice of law questions_ Were it otherwise, the scope of protection afforded the insured and the liability of the insurer could change through the various states in which certificate holders might reside.”
 

 Mem.Op. at 17-18.
 

 Miller
 
 holds that the Missouri choice of law rule is lex loci contractus, the location of the contract formation. 605 S.W.2d at 779. The
 
 Miller
 
 court declined to adopt the Restatement (Second) of Conflict of Laws § 188 “most significant relationship” test. Then the court proceeded to analyze where the insurance contract in
 
 Miller
 
 was formed. The court noted that “[wjith respect to group insurance policies, it is the majority rule that the law of the state where the master policy is delivered controls in choice of law questions.”
 
 Id.
 
 at 780. Then the court analyzed the alternative method recommended by Restatement (Second) of Conflict of Laws § 192 consistent with its “most significant relationship” test. The
 
 Miller
 
 court did not select between the majority rule and the Restatement test on this issue. Instead the court analyzed the facts under both tests concluding:
 

 Hence under either approach, Missouri law would govern. In addition, application of Missouri law furthers uniformity in the interpretation of group accident insurance policies with accidental death benefits. Were it otherwise, the scope of protection afforded the insured and the liability of the insurer could change through the various states in which certificate holders might reside.
 

 Miller
 
 can be interpreted as stating a preference for applying the law where the contract is formed, but not stating a preference as to what method should be used to decide where the contract is formed. The only preference expressed is that the insurer not be subject to unexpected changes in governing law brought about by the movement of insured parties. There are at least five possible ways to determine formation in this setting, the first three of which satisfy Missouri’s preference for determinate expectations.
 

 (1) The law of the state where the master policy is delivered from the insurance company to a selling agent controls.
 

 (2) The law of the state where the policy is delivered to the employer controls.
 

 (3) The law of the state where the employees work and where they are given the insurance certificate controls.
 

 
 *1057
 
 (4) The law of the state where the insured resides while working controls.
 

 (5) The law of the state where the insured resides at the time the conversion policy is requested controls.
 

 Missouri’s preference for determinate expectations rules out the last two possibilities. Perhaps without deciding more,
 
 Miller
 
 concluded that under the facts of that case a test looking at where the master policy was delivered or a test looking at all significant facts favored jurisdiction in Missouri.
 

 It is our policy in this Circuit to give great weight to the district court’s interpretation of the state law where the district court sits. Thus, we affirm the district court’s conclusion in this case, leaving ultimately to Missouri courts the question of what acts are required to complete the formation of a group insurance contract.
 
 Cf. Whited v. National,
 
 526 S.W.2d 364 (Mo.Ct.App.1975).
 

 Accordingly, we affirm the decision of the district court.