Inez L. PERKINS, Plaintiff-Appellee,

v.

PHILADELPHIA LIFE INSURANCE
COMPANY, Defendant-Appellant.

No. 84–1451–WM.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1984.

Decided Feb. 22, 1985.

McMillian, Circuit Judge, filed dissenting opinion.

Stephen B. Sutton, Kansas City, Mo., for defendant-appellant.

G. Stephen Long, Kansas City, Mo., for plaintiff-appellee.

Before BRIGHT and McMILLIAN, Circuit Judges, and MAGNUSON,[1] District Judge.

MAGNUSON, District Judge.

Philadelphia Life Insurance Company (Philadelphia Life) appeals from an order of the District Court[2] awarding death benefits to appellee Inez Perkins under life insurance coverage established for her deceased husband, Raymond Perkins (Perkins), during his employment as president of a Missouri Corporation, TEC, Inc. (TEC). 586 F.Supp. 296, Philadelphia Life had denied payment of death benefits because Perkins' death by suicide was excluded by the terms of the policy. The district court found that Missouri statute, § 376.620, applied to this case and nullified the suicide exclusion. Mo.Rev.Stat. § 376.620. Section 376.620 prohibits insurance companies from employing a suicide exclusion clause in policies issued to Missouri citizens. Although Perkins was at all relevant times a citizen and resident of Kansas, the court found that the life insurance policy had been issued not to Perkins, but to his employer, TEC, a Missouri corporation. Therefore the suicide exclusion was inoperative. The sole issue on appeal is whether the Missouri suicide statute, § 376.620, applies to the policy sued on in this case.

In December, 1980, Perkins was the president of TEC. On December 5, 1980, TEC entered into an Adoption and Participation Agreement with Philadelphia Life, a so-called "wrap-around" agreement whereby

---

1. The Honorable PAUL A. MAGNUSON, United States District Judge for the District of Minnesota, sitting by designation.

2. The Honorable SCOTT O. WRIGHT, District Judge for the Western District of Missouri.

TEC elected to become a Participating Employer in a PLICO 79 Trust. The Adoption and Participation Agreement and the PLICO 79 Trust together constituted a plan of group term life insurance under 26 U.S.C. § 79. Its effect was to increase the total amount of group term life insurance coverage from $50,000 to $100,000 for those employees classified as President—a class which contained only one member, Raymond Perkins. On the same date, Perkins executed an application for a policy of life insurance. The policy was issued in January 1981 with Raymond Perkins designated as the insured and the owner of the policy and was delivered to Perkins at TEC's offices in Missouri. Perkins had previously received a Certificate of Participation from Philadelphia Life, certifying that he was a participant in TEC's group term life insurance plan. An endorsement to the policy provided that it was issued under a plan of group term life insurance established by TEC. Premium payments were to be made by TEC to provide continuing group term life insurance coverage on Perkins' life. TEC qualified for deductions on premium payments and Perkins received favorable tax treatment. TEC could terminate the policy at any time.

The policy described above was in effect at the time of Perkins' death. The circumstances surrounding Perkins' death strongly indicate that he committed suicide. For purposes of this appeal, the court will assume that Mr. Perkins committed suicide. Mrs. Perkins submitted notice and proof of Perkins' death and requested payment of the policy proceeds. Philadelphia Life refused to pay the proceeds, alleging Perkins' suicide as a defense. The defendant took the position that since Perkins was a resident of Kansas, the Missouri suicide statute did not apply to bar the suicide defense. While the district court found in favor of the plaintiff on that issue, it denied plaintiff's claim that Philadelphia Life's failure to pay was vexatious, arbitrary and unreasonable, finding that defendant had a "reasonable belief" that the insured's suicide was a defense to payment under the policy.

The Missouri suicide statute, provides as follows:

> In all suits upon policies of insurance on life hereafter *issued* by any company doing business in this state, *to a citizen of this state*, it shall be no defense that the *insured* committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void.

Mo.Rev.Stat. § 376.620 (1978) (emphasis supplied). The statute's applicability to the present case turns upon whether or not the insured, a Kansas resident, was the person to whom the policy was issued.

Philadelphia Life argues that this court's decision in *Bowen v. New York Life Ins. Co.*, 117 F.2d 298, 299 (8th Cir.1941) requires a finding that the policy in question was issued to Perkins and not to TEC. In *Bowen* we declined to apply the Missouri suicide exclusion to an individual life insurance policy where the insured was not a Missouri resident. However, in *Bowen*, there was no question that the insured directly purchased the individual life insurance policy from New York Life and was the person to whom the policy was issued.

If Perkins had purchased an individual life insurance policy directly from Philadelphia Life without any third party intervention, it clearly would have been "issued to" Perkins, a Kansas citizen, within the meaning of the statute, and this court's holding in *Bowen* would permit Philadelphia Life to use Perkins' suicide as a defense to appellee's claim. *See also Lukens v. International Life Ins. Co.*, 269 Mo. 574, 191 S.W. 418 (1916). However, the court finds that the participation of TEC in contracting for the life insurance policy in the instant case requires a different result.

In *Bowen v. New York Life Ins. Co.*, 117 F.2d 298, 300 (8th Cir.1941) this court relied upon the Missouri Supreme Court's construction of § 376.620 which stated that:

"The section, when correctly construed, is but an inhibition against *making insurance contracts in this state and with citizens of this state* whereby the insurer is relieved from liability in the event the insured commits suicide. The only right, privilege, or immunity which it denies is the right to contract that in case of suicide the contract obligation shall not be effective, and this denial or abridgement extends only to the citizens of this state and insurers while contracting in this state."

*Bowen,* 117 F.2d 298, 300 (8th Cir.1941) *quoting Lukens v. International Life Ins. Co.,* 269 Mo. 574, 191 S.W. 418 (1916). The language quoted in *Bowen* indicates that the statute is designed to protect the *person who procures* the insurance and not necessarily the insured.

Philadelphia Life contends that Regulation 13.11 of the Missouri Division of Insurance makes the applicability of § 376.620 dependent upon the residence of the insured. Regulation 13.11 was adopted by the Missouri Division of Insurance to implement the provisions of § 376.620 and it contains two principal provisions. Section 2 of Regulation 13.11 provides that:

> No policy of life ... insurance whether group, individual, or any other form, will be approved for sale to Missouri citizens unless it clearly and conspicuously includes, by rider, endorsement, or printing, appropriate wording substantially equivalent to that contained in Section three. No such policy may be sold to a Missouri citizen unless it complies with this Regulation.

Section 3 of Regulation 13.11 provides that:
> Life insurance ... policies must include ... the following statement or approved substantially similar statement:
> Suicide is no defense to payment under this contract where the insured is a Missouri citizen....

The language provided for in Section 3 of Regulation 13.11 is the same language contained in the policy issued by Philadelphia Life.

Regulation 13.11 does not purport to interpret the Missouri suicide statute. Rather, it is a regulation designed to implement the statute by requiring insurance companies to notify policy holders of the existence of § 376.620. The method chosen to ensure that policy holders are informed of § 376.670 is to require specific language attached to any policy "sold to a Missouri citizen." *See* Regulation 13.11, Section 2. The language requiring the endorsement to be placed upon any policy "sold to a Missouri citizen" indicates that the Missouri Division of Insurance was concerned with the sale of insurance to Missouri citizens. While it is true that the endorsement language required by Section 3 states that suicide is no defense where the *insured* is a citizen of Missouri that is not inconsistent with the Missouri Supreme Court's interpretation of the "issued to" language cited by this court in *Bowen.* In most instances the insured and the person to whom the policy is issued are the same person. Moreover, the term "insured" in group life policies is sometimes used to refer to the employer (the "definite" insured) as well as to the employee (one of many "contingent" insureds). *See* Appleman, *Insurance Law* § 46 (Rev.Ed.1981).

 The court is persuaded that, while the Missouri suicide statute is susceptible of several meanings, the "issued to" language of § 376.620 refers to the person to whom the policy is sold. To determine to whom the policy was sold in the present case it is necessary to examine the nature of the contractual relationship between TEC, Perkins, and Philadelphia Life. The policy in question was issued under a plan of group insurance coverage maintained by TEC. The form of the insurance contract is not that of a master policy and a certificate of participation,[3] but rather that of a separate insurance policy which is issued pursuant to a larger group plan entered

---

**3.** If the policy was clearly a master policy of group life insurance contracted for by TEC and Philadelphia Life, with Perkins covered as an insured employee by means of a certificate of participation, it would appear that Missouri law would bar suicide as a defense.

into by TEC and Philadelphia Life. While it is true that Perkins was the owner and the insured of the policy, but all other factors indicate that the policy was sold to TEC.

Philadelphia Life looked to TEC for the payment of premiums and all of the premiums were paid by TEC. TEC retained the right to cancel the policy unilaterally and was entitled to an income tax deduction for the premium payments. Moreover, the policy at issue was sold as a plan of group term life insurance under 26 U.S.C. § 79 (1982). Section 79 provides favorable tax treatment to *group* life insurance purchased by employers for their employees.[4] It clearly was the intention of the parties to have TEC purchase group[5] life insurance for the benefit of Perkins. Thus, the structure of the arrangement between TEC, Philadelphia Life, and Perkins leads this court to conclude that the policy was sold to TEC for the benefit of Perkins and hence was "issued to" TEC for purposes of § 376.620.

For the reasons stated above, the judgment of the district court is AFFIRMED.

McMILLIAN, Circuit Judge, dissenting.

I respectfully dissent. I agree that the critical question in this case is whether the life insurance policy was issued to Perkins or to TEC. The majority affirms the district court's finding that the policy was issued to TEC, a Missouri citizen. I disagree and would hold that the policy was issued to Perkins, a Kansas resident, and that Mo.Rev.Stat. § 376.620 (1978) does not apply to the policy.

Section 376.620 applies to policies "issued ... to a citizen of this state." Regulation No. 13.11, 4 C.S.R. 190–13.110, of the Missouri Division of Insurance, which implements the statute, requires insurance companies doing business in Missouri to state in their policies that suicide is not a defense if the *insured* is a Missouri citizen. The regulation therefore bars suicide as a defense only in those instances where the policy is issued to an insured who is also a Missouri citizen.

Missouri courts have not decided the validity of this regulation nor construed § 376.620 in a case where the policy was issued to someone other than the insured. The Missouri Supreme Court has held that § 376.620 did not apply to an individual life insurance policy issued by a Missouri corporation to an insured who was an Illinois citizen. *Lukens v. International Life Insurance Co.*, 296 Mo. 574, 191 S.W. 418 (1916) (*Lukens*), *appeal dismissed*, 248 U.S. 596, 39 S.Ct. 182, 63 L.Ed. 438 (1919). The Eighth Circuit, relying on *Lukens*, reached a similar result in *Bowen v. New York Life Insurance Co.*, 117 F.2d 298 (8th Cir.1941) (*Bowen*).

Missouri courts have not decided the applicability of § 376.620 to policies issued to Missouri citizens who are not the insured under the policy. *Lukens* and *Bowen* involved individual policies issued to the insured. *Lukens* does not hold, as the majority opinion states, that § 376.620 is intended to protect the purchaser of the insurance and that the residence of the insured is irrelevant.

*Miller v. Home Insurance Co.*, 605 S.W.2d 778 (Mo.1980) (banc) (*Miller*), involved facts similar to the present case.[1]

---

**4.** 26 U.S.C. § 162(a) provides that the employer may deduct the premiums while § 79 provides favorable tax treatment to the employee.

**5.** Philadelphia Life argues that the policy at issue should be construed as an individual policy since only one employee, Perkins, was covered and for there to be a valid group insurance policy there must be more than one person covered. However, Missouri Statute § 376.691 provides that group insurance may cover either a group of employees or a class of employees— in this case those employees designated as "Pres-

ident". While at the time the policy was issued there was only one person in the class, there could be more than one member of the class— both a retired President and a current President. The mere fact that only one person was covered by the policy does not necessarily mean that the policy was an individual policy of life insurance.

**1.** Appellee argues that the Missouri Supreme Court in *Miller v. Home Ins. Co.*, 605 S.W.2d 778 (Mo.1980) (banc) (*Miller*), implicitly held that Mo.Rev.Stat. § 376.620 (1978) applied to the

*Miller* held that the law of the state where the master policy is delivered controls choice of law questions. *Miller* did not decide, however, whether the citizenship of the Missouri employer (group policyholder) or the Alabama citizen (insured) governed the applicability of § 376.620. *Id.* at 780–81.

The district court in the present case therefore had to decide an issue which had not been decided by Missouri's highest court. In such a situation, a federal court in a diversity case must determine how the state's highest court would decide if it were faced with the same issue. *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 236–37, 61 S.Ct. 179, 183–84, 85 L.Ed. 139 (1940); *Finch v. Mississippi State Medical Ass'n*, 585 F.2d 765, 777 (5th Cir. 1978). A federal court should proceed with caution in interpreting state law to avoid imposing a duty under state law that would not be imposed by the courts of that state. *Rhynes v. Branick Manufacturing Corp.*, 629 F.2d 409, 410 (5th Cir.1980); *MacLean v. Parkwood*, 354 F.2d 770, 772 (1st Cir. 1966).

Although Missouri courts have not decided this issue, the Missouri Division of Insurance has promulgated Regulation 13.11, implementing the statute. The Division is charged with the interpretation and implementation of Missouri's insurance laws. Regulation 13.11 requires the following statement or its equivalent on all life insurance policies sold in Missouri:

> *Suicide is no defense* to payment of life insurance benefits nor is suicide while insane a defense to payment of accidental death benefits, if any, under this policy *where the insured is a Missouri citizen* unless the insurer can show that the insured intended suicide when he applied for the policy, regardless of any language to the contrary in the policy.

(Emphasis added.) "While an administrative interpretation may not be permitted to

alter or overturn a prior judicial construction of a statute, administrative interpretations are utilized as ... tool[s] for determining legislative intent when construing an ambiguous statute." *Smith Beverage Co. v. Reiss*, 568 S.W.2d 61, 67 (Mo.1978) (banc) (citations omitted). The Missouri Supreme Court also held that the failure of the Missouri legislature to alter the effect and language of an administrative regulation indicates the legislature's approval of the regulation. *Id.* at 68.

Regulation 13.11 was promulgated in 1975. The legislature's failure after nine years to modify the language and effect of the regulation indicates the legislature's tacit approval of the regulation. Guided by Regulation 13.11 and the Missouri legislature's action toward it, I would construe § 376.620 to apply only to policies issued in Missouri where the insured is a Missouri citizen at the time the policy is issued. TEC is not the insured. M. Rhodes, 19 Couch on Insurance 2d § 82:1 (rev. ed. 1982). The insured in the present case was Perkins, a Kansas citizen; therefore, § 376.620 does not apply to the policy.

I do not believe, however, that this case turns on whether § 376.620 applies only to insureds who are Missouri citizens. Even if § 376.620 applies to policies issued to Missouri citizens with no further qualification, I cannot agree that the policy was issued to TEC.

The authorities are in agreement in defining group life insurance. Group life insurance insures the individual lives of a number of persons by a single, comprehensive or master policy, *e.g.*, *Legler v. Meriwether*, 391 S.W.2d 599, 602 (Mo.Ct.App. 1965); *McFarland v. Business Men's Assurance Co.*, 105 Ga.App. 209, 124 S.E.2d 432, 433 (1962); 44 Am.Jur.2d Insurance § 1842 (1982). The master policy is issued to the group policyholder; certificates are issued to the insured individuals, *Hofeld v.*

---

master policy issued to the Missouri employer and policyholder. I do not agree that this is the holding of *Miller* or that there is dicta in *Miller* to this effect. Further, *Miller* can be distinguished from the present case. The Missouri

employer in *Miller* was issued a master policy. The employer in the present case was not issued an insurance policy of any kind. *Miller* does not therefore indicate how the Missouri Supreme Court would decide the present case.

*Nationwide Life Insurance Co.*, 59 Ill.2d 522, 322 N.E.2d 454 (1975); 44 Am.Jur.2d Insurance § 1842 (1982), to inform them that they are insured under the group policy. *Crawford v. Metropolitan Life Insurance Co.*, 167 S.W.2d 915, 924 (Mo.Ct.App. 1943).

Group life insurance is normally offered by employers as a fringe benefit. *Simpson v. Phoenix Mutual Life Insurance Co.*, 24 N.Y.2d 262, 299 N.Y.S.2d 835, 840, 247 N.E.2d 655, 658 (1969). Coverage continues for eligible employees as long as they remain employed. *Legler v. Meriwether*, 391 S.W.2d at 602; *Holland v. Lincoln National Life Insurance*, 45 N.J.Super. 66, 131 A.2d 428, 429 (1957); J. Appleman & J. Appleman, 1 Insurance Law and Practice §§ 121, 125 (1981). Premiums are paid wholly or partially by the employer. *Holland v. Lincoln National Life Insurance Co.*, 131 A.2d at 429. The cost of group insurance is generally less than comparable individual insurance. *Simpson v. Phoenix Mutual Life Insurance Co.*, 299 N.Y.S.2d at 840, 247 N.E.2d at 658.

Part of the difficulty in determining to whom this policy was issued stems from the method Philadelphia Life and TEC employed to secure insurance. Philadelphia Life did not issue a master policy to TEC covering its employees but rather entered into a plan for group life insurance with TEC and issued an individual policy to Perkins. The insurance covering Perkins' life, therefore, had some features of group insurance and some features of individual insurance.

The majority opinion considers TEC's plan for group insurance, TEC's payment of the premiums, and TEC's right to terminate the individual policy to be controlling in determining that the policy was part of a group insurance plan and that the policy was issued to TEC. In order to reach this conclusion, the majority opinion ignored or failed to give proper weight to other undisputed facts which require a contrary conclusion. Most importantly, Philadelphia Life did not insure a group of persons. Perkins was the only person in the class of

"president" (the only class to be insured by Philadelphia Life). Further, Perkins would be the only person insured under the group insurance plan for at least ten years—from the issuance of the policy in 1980 to Perkins' anticipated retirement in 1990. The contract between TEC and Philadelphia Life stated that an individual policy would be issued; consistent with this statement, Philadelphia Life issued an individual policy. The Missouri Division of Insurance approved the policy as an *individual* policy.

Several other facts indicate that the insurance covering Perkins was individual insurance and not group insurance. The policy in clear, unambiguous terms identified Perkins as the *owner* and insured. Perkins was required to take a physical examination as part of his application for insurance, which is not commonly required for group insurance. Further, Perkins' insurance was to continue after his retirement from TEC at no cost to him; continuation of insurance after employment is also not common in group insurance. All these facts considered together indicate that the insurance on Perkins' life was individual insurance.

The district court erred in concluding that the insurance was group insurance and that the insurance was issued to TEC. TEC was never issued an insurance policy. TEC was given a contract or plan for group life insurance; the contract contained no "insuring agreements." There was no basis for TEC to receive the policy on Perkins' life. TEC was neither the owner nor the insured. TEC was not the policyholder because the policy was not a master policy. Perkins, the owner and insured, was the only one to whom the policy could have been issued. I would hold, therefore, that the policy was issued to Perkins, a Kansas citizen.

In my view the majority opinion has expanded the applicability of Missouri's suicide exclusion statute beyond what the Missouri legislature intended. A corporation purchasing group insurance for its employees could secure the protection of § 376.-

620 regardless of the employees' citizenship by having the policy executed in and delivered to its corporate offices in Missouri. An extreme example of this is a Missouri corporation purchasing group life insurance for its employees who are citizens of other countries. Missouri law would seek to protect persons who have no connection whatsoever with the state. I do not believe that the Missouri legislature in enacting § 376.620 has clearly indicated an intention to provide such broad coverage. Neither have Missouri courts construed § 376.620 to be so broad in scope. A federal court should not take such a bold step.

Accordingly, I would reverse the decision of the district court and hold that the beneficiary under this policy was entitled only to the premium payments made on the policy.