(796 P.2d 1069)

No. 64,401

MARY FRASHER, Personal Representative for The Estate of STEVEN G. FRASHER, *Appellant,* v. LIFE INVESTORS INSURANCE COMPANY OF AMERICA, *Appellee.*

Opinion filed July 27, 1990.

*Fred J. Logan, Jr.,* and *Scott K. Logan,* of Logan & Logan, of Prairie Village, and *Ross S. Myers,* of Blevins, White, Pietz & Myers, P.C., of Raymore, Missouri, for appellant.

*Daniel M. Zimmerman,* of Speer, Austin, Holliday & Ruddick, of Olathe, for appellee.

Before BRAZIL, P.J., LARSON, J., and DAVID S. KNUDSON, District Judge, assigned.

BRAZIL, J.: Mary Frasher, administrator of Steven G. Frasher's estate, appeals the district court's decision granting summary

judgment to Life Investors Insurance Company of America. The trial court held that a Missouri statute barring suicide as a defense to paying life insurance benefits did not apply in this case and that there was no coverage under the terms of a policy issued by Life Investors. We reverse and remand.

On January 12, 1988, Steven G. Frasher made an installment purchase of a vehicle from John Wallace Dodge, Inc., (Dodge) a car dealer in Overland Park, Kansas. Dodge is a Delaware corporation authorized to do business in Kansas. Frasher was a resident of Missouri. He applied for and received credit life insurance available under a group credit life policy issued to Dodge. Dodge acted as an agent for Life Investors pursuant to a contract between the two formed in 1982. The master policy, delivered to Dodge in Kansas, allowed Dodge to solicit debtors to purchase the insurance and provided for a percentage commission to Dodge on each policy of insurance sold. Each debtor received a certificate of insurance that was first sent to Dodge by Life Investors and then mailed to the debtor by Dodge.

The coverage was decreasing term insurance amortized evenly over 60 months, the term of the installment purchase contract. Premiums were paid monthly by Frasher to Dodge, which then forwarded them to Life Investors. Dodge was the designated beneficiary of the policy.

Frasher died of an apparent self-inflicted gunshot wound. Dodge's assignee of the installment purchase agreement, Chrysler Credit Corporation, repossessed and sold the vehicle. Policy proceeds, if owed, were to be paid to Frasher's estate. However, Life Investors tendered only premiums paid, contending the following policy exclusion was applicable: "SUICIDE: If an Insured Obligor or spouse dies by self destruction within one year from the Effective Date of coverage, whether sane or insane and while the Certificate is in force, the death benefits payable hereunder shall be limited to the amount of the premium paid."

Frasher's estate brought this lawsuit, asserting Missouri law was applicable and precludes suicide as a policy defense. Appellant relies upon this statute:

"In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to

the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void." Mo. Rev. Stat. § 376.620 (1986).

The trial court, in granting summary judgment for Life Investors determined that, absent a valid choice of law provision in the policy, Kansas law would govern as the place of the making of the contract. The court also found that, even assuming the choice of law provision in the policy pointed to Missouri law, the Missouri statute did not apply because the policy was not " 'issued . . . to a Missouri resident.' "

There are general rules regarding the construction of insurance policies this court must follow. "The construction and effect of insurance contracts are questions of law to be determined by the court." *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, 177, 660 P.2d 1374 (1983). The construction given the insurance policy should give effect to the parties' intent. The test is what a reasonable person in the position of the insured would understand the policy to mean. 233 Kan. at 179-80.

For choice of law purposes where the issue is contract construction, Kansas applies the rule of *lex loci contractus, i.e.*, the place of the making. *Fagan v. John Hancock Mutual Life Insurance Company*, 200 F. Supp. 142 (D. Kan. 1961). In group life policies, "[i]t is generally held that such contracts are made where the master policy and the individual certificate are delivered." 200 F. Supp. at 143. In the instant case, the master policy was delivered to Dodge in Kansas; thereafter, the car agency delivered the individual certificate to Frasher. Whether Frasher's certificate was mailed to him in Missouri or delivered to him at the car agency's office in Kansas is not clear.

In *Simms v. Metropolitan Life Ins. Co.*, 9 Kan. App. 2d 640, 644, 685 P.2d 321 (1984), the court held: "As a matter of conflict of laws doctrine we find the majority rule to be that the interpretation of a group insurance contract is governed by the law of the state where the master policy is delivered." In the instant case, this would result in enforcement of the suicide clause within the policy. However, this issue is complicated by other provisions in the policy that suggest further consideration and analysis.

A relevant clause in the insuring agreement states: "CONFORMITY WITH STATE STATUTES: Any provision of this Policy which, on its Effective Date, is in conflict with the statutes of the state in which the Insured resides on such date is hereby amended to conform to the minimum requirements of such statutes." The key language is "in which the Insured resides" because Frasher is a Missouri resident.

Terms of an insurance policy must be construed as a whole. *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. at 180. A policy or clause is ambiguous if the words conveying meaning or intent are subject to two or more meanings. 233 Kan. at 180. Although it is possible to construe the term "insured" to mean Dodge, a more reasonable conclusion is that "insured" in the policy refers to the deceased debtor. "Insured" is defined as: "The person who obtains insurance on his property, *or upon whose life an insurance is effected.*" (Emphasis added.) Black's Law Dictionary 946 (4th ed. rev. 1968).

On the face of the policy, Life Investors states that it insured the lives of "Obligors of the Creditor." Under the terms of the policy, the creditor is the beneficiary under the policy. Upon the death of the "Insured Obligor," the proceeds of the policy go to the creditor. To call Dodge the "insured" under this policy would not be consistent with all the references in the policy to the debtor as the insured. In various places, the policy speaks of the "Obligor or spouse insured hereunder." Thus, in the policy and the individual certificate where the policy refers to the "insured," it is reasonable to conclude it is referring to the deceased in the instant case. Therefore, the policy should be read to conform to the laws of the State of Missouri, since that is where the deceased "insured" resided.

Having determined Missouri law should apply, the question is whether Mo. Rev. Stat. § 376.620 (1986) allows Frasher's estate to recover. This would necessitate a finding that the policy of life insurance was issued to the deceased. This is the only contested portion of the statute. Life Investors argues the policy was issued to Dodge, which is a corporation doing business in Kansas. The Missouri statute would not apply in that case.

There are few cases addressing this particular issue and usually the cases involve group life insurance. Credit life insurance is

somewhat different and has been defined as "insurance on the life of a debtor for the security of the creditor in connection with a credit transaction." 1 Appleman, Insurance Law and Practice § 59 (1981). Although a master policy is issued to the lending organization and an individual certificate to the debtor, the rights of the certificate holder are seen as greater than in a regular group life policy because it generally cannot be terminated short of the specified maturity. This is usually the death of the debtor or repayment of the loan. 1 Appleman, Insurance Law and Practice § 59. One passage from Appleman is particularly instructive:

"When it comes to a construction of the several instruments involved in credit life insurance, it becomes important to recall the nature of such coverages. If the courts bear in mind that this [is] franchise insurance, and not group insurance except in the situation where the creditor purchases the coverage as to the obligations of its debtors upon a noncontributory basis, it should present little problem. When they persist in calling it group insurance, then it throws it into the area of confusion where many courts, particularly in older decisions rendered under employer group contracts, tend to let the master policy dominate while the bulk of more recent decisions consider the certificates to control." 1 Appleman, Insurance Law and Practice § 59.75.

In *Perkins v. Philadelphia Life Ins. Co.*, 755 F.2d 632 (8th Cir. 1985), the court had to decide whether the individual insured, a Kansas resident, was the person to whom the policy was issued under Mo. Rev. Stat. § 376.620 (1978). The life insurance was group term life, and the employer was a Missouri corporation. The employer paid the premiums and had the power to cancel the policy. The policy designated Perkins as the insured and owner of the policy. Perkins apparently committed suicide. In construing the Missouri statute, the court stated that the corporation was the insured to which the policy was issued and allowed recovery of the life insurance proceeds. 755 F.2d at 633. In so stating, the court determined the statute was "designed to protect the *person who procures* the insurance and not necessarily the insured." 755 F.2d at 634. The court, however, states that the statute is open to different interpretations and "the 'issued to' language of § 376.620 refers to the person to whom the policy is sold." 755 F.2d at 634.

Life Investors cites *Perkins* to argue that it is the residence of the holder of the group policy that determines the applicability

of § 376.620. In *Perkins*, TEC, Inc., the holder of the group policy, was a Missouri corporation; whereas, in this case, Dodge, the holder of the group policy, is a Delaware corporation doing business in Kansas.

Before commenting on *Perkins* we must note that, in construing state statutes, we are not bound by federal interpretations. *Brookover Feed Yards, Inc. v. Carlton, Commissioner*, 213 Kan. 684, 689, 518 P.2d 470 (1974). However, in the absence of any Missouri decisions on this issue, the *Perkins* case is instructive.

Our reading of *Perkins* suggests the court concluded that the "issued to" language of § 376.620 refers to the person to whom the policy is sold and further concluded that it was necessary to determine the contractual relationship between TEC, Perkins, and Philadelphia Life. The court noted that, while Perkins was the owner and the insured of the policy, all other factors indicated the policy was sold to TEC. Philadelphia Life looked to TEC for payment, and payments were made by TEC. TEC retained the right to unilaterally cancel the policy, it was entitled to an income tax deduction for premium payments, and the plan was sold to TEC under 26 U.S.C. § 79 (1982), which provided favorable tax treatment to employers. This led the court to conclude that it was the intention of the parties to have TEC purchase the life insurance for the benefit of Perkins and that the policy was "issued to" TEC for purposes of § 376.620.

The facts in the instant case indicate that the policy was not sold to Dodge. Rather, Frasher purchased the credit life coverage from Life Investors through Dodge as Life Investors' agent. Dodge received a commission for each policy sold. Dodge did not pay the premiums for the credit insurance, and debtors had a choice as to whether they would purchase the insurance.

Under the facts of this case, considering the nature of the contractual relationship between Frasher, Dodge, and Life Investors, we conclude that a policy of insurance was purchased by Frasher, a Missouri resident, from Dodge as agent for Life Investors, and that it was "issued to" Frasher for purposes of § 376.620. Therefore, pursuant to § 376.620, Frasher's suicide does not preclude the payment of benefits under the terms of the policy.

In its petition, the Frasher estate also requested attorney fees (Count II) under K.S.A. 40-256. The trial court apparently

granted Life Investors' motion for summary judgment on Count II because it had granted judgment against the estate on Count I. In short, it appears to us that the trial court did not address the issue of attorney fees on the merits.

Reversed and remanded to the trial court to order payment under the terms of the policy and for further proceedings on the issue of attorney fees.

KNUDSON, J., dissenting: The majority's reasoning that Missouri law applies is unassailable. Frasher was the insured. My quarrel is with the conclusion that the underlying policy of insurance, within the meaning of Missouri law, was issued to Frasher rather than to Dodge, the Kansas car dealer. I would adopt the reasoning expressed in *Perkins v. Philadelphia Life Ins. Co.*, 755 F.2d 632 (8th Cir. 1985), cited by the majority.

The majority's efforts to distinguish the circumstances at bar from those in *Perkins* are unpersuasive because of the explicit language of Mo. Rev. Stat. § 376.691 (Supp. 1989), which states in material part:

"Except as provided in section 376.693, no policy of group life insurance shall be delivered in this state unless it is one of the following:

"(1) A policy issued to an employer . . . to insure employees of the employer for the benefit of persons other than the employer, subject to the following requirements:

"(a) The employees eligible for insurance under the policy shall be all of the employees of the employer, or all of any class or classes of such employees. . . .

"(b) The premium for the policy shall be paid either from the employer's funds or from funds contributed by the insured employees, or from both. . . .

"(c) An insurer may exclude or limit the coverage on any person as to whom evidence of individual insurability is not satisfactory to the insurer;

"(2) A policy issued to a creditor . . . which creditor . . . shall be deemed the policyholder, to insure debtors of the creditor . . . subject to the following requirements:

"(a) The debtors eligible for insurance under the policy shall be all of the debtors of the creditor . . . or all of any class or classes of such debtors. The policy may provide that the term 'debtors' shall include:

"a. . . . purchasers . . . of goods . . . for which payment is arranged through a credit transaction;

. . . .

"(b) The premium for the policy shall be paid either from the creditor's funds or from charges collected from the insured debtors, or from both. . . .

. . . .

"(d) The amount of the insurance on the life of any debtor shall at no time exceed the scheduled amount of indebtedness to the creditor.

"(e) The insurance may be payable to the creditor or any successor to the right, title, and interest of the creditor. Such payment shall reduce or extinguish the unpaid indebtedness of the debtor to the extent of such payment. Any excess insurance above the scheduled amount shall be payable to the second beneficiary; if there is no second beneficiary, the insured's estate."

I believe the above statute to be unambiguous in its treatment of group life insurance policies. Whether issued to an employer or to a creditor, policies that come within the statute should be considered *sui generis* as to the applicability of the Missouri suicide law. That is, regardless of which kind of group policy is considered, the words "delivery" and "issuance" used in the same statute should be defined consistently. The statute explicitly provides for delivery of the group policy with no reference whatsoever as to delivery of individual certificates. Reading this statute in conjunction with § 376.620 provides the inescapable conclusion that it is the delivery of a group policy and not an individual certificate that controls.

Finally, I note that the Missouri legislature has apparently chosen not to amend § 376.620 since *Perkins.*

I would affirm the district court's decision.