# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1168

_____

Sheila Hamilton,        *
            *
       Appellant,        *
            *   Appeal from the United States
       v.             *   District Court for the
            *   Western District of Missouri.
Standard Insurance Company,    *
            *
       Appellee.        *

_____

Submitted: October 19, 2007
Filed: November 15, 2007

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Based upon and relying on a suicide exclusion clause, Standard Insurance Company reduced the amount of death benefits paid to Sheila Hamilton under a group insurance policy providing coverage for her deceased husband. Hamilton sued Standard in federal district court contending a Missouri statute barring suicide defenses for insurance policies issued to citizens of the state of Missouri should apply. The district court[1] concluded the Missouri statute did not apply because the policy was issued to a non-Missouri citizen in Idaho, and granted summary judgment

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

in favor of Standard. <u>Hamilton v. Standard Ins. Co.</u>, 462 F. Supp. 2d 1033, 1036-38 (W.D. Mo. 2006). We affirm.

I

At all relevant times herein, Albertsons, Inc., provided its eligible employees with life insurance benefits pursuant to an employee benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461. As to benefits under the plan, Albertsons purchased a group life insurance policy from Standard. The front page of the policy indicates it was issued in Idaho (Albertsons is headquartered in Boise, Idaho) and lists "Albertsons Employees' Health and Welfare Trust" as the policyholder.

Robert Hamilton, Sheila's husband, was an Albertsons employee covered by the plan at the time of his death on August 1, 2004. Sheila was named as the beneficiary of Robert's benefits. Robert had basic "Plan 1" life insurance benefits in an amount equal to twice his annual earnings, or $77,000. Beginning June 1, 2003, Robert elected additional "Plan 2" life insurance benefits in the amount of $20,000. Albertsons paid the premiums for the basic life insurance benefits, while Robert paid for the optional coverage by having the premiums deducted from his paycheck.

Robert's certificate of death indicates he died as the result of a self-inflicted gunshot wound to the chest. The Standard policy contains a suicide exclusion clause which provides:

> If your death results from suicide or other intentionally self-inflicted injury, while sane or insane, 1 and 2 below apply.
>
> 1. The Plan 1 Life Insurance Benefit payable will be limited to 50% of the amount of your Plan 1 Life Insurance.

2.  The Plan 2 Life Insurance Benefit payable will exclude the amount of your Plan 2 Life Insurance which has not been continuously in effect for at least 2 years on the date of your death. In computing the 2-year period, we will include time you were insured under the Prior Plan.[2]

Jt. App. 12-13.

After Robert's death, Sheila filed a claim with Standard for $77,000 in basic Plan 1 benefits, and $20,000 in Plan 2 benefits. Pursuant to the policy's suicide exclusion clause, Standard paid only $39,000 in basic benefits (half of $77,000 rounded to the next higher multiple of $1,000) and denied the claim for $20,000 in Plan 2 benefits because Robert did not elect that coverage until June 1, 2003, less than two years before his death on August 1, 2004. Standard also refunded the premiums Robert had paid for the Plan 2 benefits between June 2003 and July 2004 (a total of $27.30).

Sheila filed suit against Standard in federal district court. Standard moved for summary judgment. Sheila opposed the motion arguing Mo. Rev. Stat. § 376.620 should be incorporated into the terms of Standard's policy and should bar Standard from reducing her benefits under the policy's suicide exclusion clause. At the relevant time, § 376.620 provided:

In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured

---

[2]The policy's reference to "Prior Plan" referred to the fact that Albertsons had used a different insurance company to provide life insurance benefits under its employee benefit plan prior to June 1, 2003. Under the Prior Plan, Robert had coverage for Plan 1 benefits, but did not have any coverage for Plan 2 benefits.

-3-

contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void.

Mo. Rev. Stat. § 376.620 (2002).[3]

Although § 376.620 by its terms only applies to "policies of insurance . . . issued . . . to a citizen of this state" and the Standard group policy was issued to a non-Missouri citizen in Idaho, Sheila argued the statute should still apply because Robert, a Missouri citizen, was issued an individual certificate of insurance. In addition, with respect to the optional Plan 2 benefits, Sheila argued the period of time Robert had Plan 1 benefits under the Prior Plan should be counted towards, and satisfied, the two-year vesting period. Finally, Sheila belatedly[4] argued § 376.620 should apply to the Plan 2 benefits, even if it did not apply to the Plan 1 benefits, because Robert paid the premiums for the optional coverage himself, and therefore such coverage should be construed as a separate policy of insurance affected by § 376.620.

---

[3]Section 376.620 was amended effective August 28, 2007. The statute now provides:

1. Any life insurance or certificate issued or delivered in this state, may exclude or restrict liability of death as the result of suicide in the event the insured, while sane or insane, dies as a result of suicide within one year from the date of the issue of the policy or certificate. Any such exclusion or restriction shall be clearly stated in the policy or certificate.

2. Any life insurance policy or certificate which contains any exclusion or restriction under subsection 1 of this section shall also provide that in the event the insured dies as a result of suicide within one year from the date of issue of the policy that the insurer shall promptly refund all premiums paid for coverage on such insured.

[4]This argument was first raised in a motion for reconsideration Sheila filed after the district court had already granted Standard's summary judgment motion.

The district court granted Standard's motion for summary judgment, concluding § 376.620 did not apply because the policy was a group policy issued to a non-Missouri citizen. The district court further concluded Sheila's claim the statute should apply because Robert Hamilton was a Missouri citizen, and the holder of a certificate of insurance under the group policy, was foreclosed by our decision in Perkins v. Philadelphia Life Insurance Co., 755 F.2d 632 (8th Cir. 1985). Finally, the district court held Standard did not abuse the discretion it was afforded under ERISA when it determined the two-year vesting period had not been satisfied for the Plan 2 benefits, and rejected Sheila's belated claim the Plan 2 benefits should be construed as a separate policy of insurance to which § 376.620 applied. Sheila filed a timely appeal.

II

We review the district court's grant of summary judgment de novo, applying the same standards as the district court. Craig v. Pillsbury Non-Qualified Pension Plan, 458 F.3d 748, 752 (8th Cir. 2006). This case involves the interpretation of a Missouri statute, an issue we review de novo. McIntyre v. Caspari, 35 F.3d 338, 343 (8th Cir. 1994). This case also involves the interpretation of an insurance policy governed by ERISA. In such a case, the district court applies an abuse of discretion standard to the plan's decision if the plan administrator has discretion to interpret the terms of the plan, Barham v. Reliance Standard Life Ins. Co., 441 F.3d 581, 584 (8th Cir. 2006), a de novo standard when the plan does not grant its administrator that discretion, id., and a sliding scale approach somewhere between abuse of discretion and de novo when the claimant demonstrates a serious procedural irregularity caused a serious breach of the administrator's fiduciary duty. Tillery v. Hoffman Enclosures, Inc., 280 F.3d 1192, 1197 (8th Cir. 2002). "We have plenary review over the district court's determination of the appropriate standard of review to apply to an ERISA plan's denial of benefits." Barham, 441 F.3d at 584 (citing Tillery, 280 F.3d at 1196).

On appeal, Sheila contends the district court erred when it determined most of her arguments regarding the proper interpretation and application of Mo. Rev. Stat. § 376.620 are foreclosed by our decision in Perkins. We disagree. The policy involved here is a group insurance policy issued to a non-Missouri citizen in Idaho, not an individual policy issued to a Missouri citizen. In Perkins, as in this case, a certificate holder's residency differed from that of the group policy holder; we held it was the group policyholder's residence which determined whether Mo. Rev. Stat. § 376.620 applied, not the residence of the individual certificate holder. See Perkins, 755 F.2d at 634-35 (indicating § 376.620's "issued . . . to" language refers to the person to whom the policy is sold, which in the case of a group policy is the group policyholder, not the holder of an individual certificate of insurance); see also Miller v. Home Ins. Co., 605 S.W.2d 778, 780 (Mo. 1980) (applying choice-of-law principles by looking to the state where a group policy was issued to the group policyholder, not the state where the holder of an individual certificate of insurance resided, in order to determine whether § 376.620 applied).

In support of her position, Hamilton relies upon two district court decisions, Nelson v. Aetna Life Insurance Co., 359 F.Supp. 271 (W.D. Mo. 1973), and Moss v. National Life and Accident Co., 385 F. Supp. 1291 (W.D. Mo. 1974). Those cases involve the issue whether Missouri follows the *lex loci delicti* rule rather than the most-significant-contacts test for choice-of-law purposes. This case does not turn upon choice-of-law principles, however, but rather upon an issue of statutory interpretation, i.e., determining what § 376.620 means when it says it only applies to policies "issued . . . to a citizen of this state." That issue of statutory construction was addressed in Perkins, which controls this case.

Furthermore, with respect to the argument that § 376.620 should apply not only to policies of insurance issued to Missouri citizens, but also to certificates of insurance issued to Missouri citizens under a group policy issued to a non-Missouri citizen, we note the amended statute now specifically refers to both "life insurance polic[ies]" and

"certificate[s] issued or delivered in this state." See Mo. Rev. Stat. § 376.620 (1) & (2) (effective August 28, 2007). Any reference to "certificates" is, however, notably absent from the version of the statute before us, and we are not at liberty to disturb the holding in Perkins. See United States v. Reynolds, 116 F.3d 328, 329 (8th Cir. 1997) ("One panel may not overrule another.").

With respect to Standard's denial of $20,000 in Plan 2 benefits, Sheila argues in the alternative that Standard abused its discretion when it determined the suicide exclusion clause's two-year vesting period had not been satisfied. Sheila focuses on the clause's inclusion of "time . . . insured under the Prior Plan" in computing the two-year period, and argues her husband's coverage for Plan 1 benefits under the Prior Plan satisfied the two-year period, even though he did not elect any amount of Plan 2 benefits until June 1, 2003, less than two years before his death on August 1, 2004. Another provision in the clause clearly provides, however, the Plan 2 benefits payable "will exclude the *amount* of your Plan 2 Life Insurance which has not been continuously in effect for at least 2 years on the date of your death." Jt. App. 12-13 (emphasis added).

Assuming *arguendo* Robert satisfied the two-year vesting period due to the time he had Plan 1 benefits under the Prior Plan, the ensuing calculation of the *amount* of Plan 2 benefits payable would still result in no benefits being payable, because any amount of Plan 2 benefits not in effect for at least two years are excluded. The amount of $20,000 would be excluded because it was not an amount in effect at least two years prior to Robert's death.[5]

---

[5]Because we would find this to be a correct interpretation of the suicide exclusion clause even under a de novo standard of review, we decline to address any of Sheila's arguments relating to her claim the district court erred in applying an abuse-of-discretion standard, or her claim she should have been entitled to discovery to uncover procedural irregularities or conflicts of interest.

-7-

Finally, we reject Sheila's contention that, because Robert himself paid the premiums for the Plan 2 benefits, such coverage should be construed as an entirely separate contract of insurance between Robert and Standard, rather than a part of the group policy issued to Albertsons Employees' Health and Welfare Trust (with the result being that § 376.620 would apply because this separate "policy" was issued to a Missouri citizen). As the district court noted, Robert's Plan 2 coverage was not a separately issued policy, but "merely a subset of coverage under the larger plan issued to Albertsons in Idaho." Addendum at 66. As the group policyholder, Albertsons could have unilaterally terminated the insuring agreement even if Robert had wished to continue coverage for Plan 2 benefits. Thus, there is no support for Sheila's claim regarding a separate contract of insurance flowing directly between Robert and Standard. See White v. Prudential Ins. Co. of Am., 127 S.W.2d 98, 102 (Mo. Ct. App. 1939) ("It is held that a contract of group insurance is one between the insurer and the employer for the benefit of the latter's employees, and that the certificate of insurance which is issued to the individual employee is merely a statement to him that he is insured under the group policy. It follows, therefore, that the rights of an employee or his beneficiary are to be determined under the provisions of the contract between the insurer and the employer.") (internal citations omitted).

III

We affirm the district court.

_____

-8-